**DELTA DRILLING COMPANY,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 25790.

United States Court of Appeals
Fifth Circuit.

Jan. 13, 1969.

Lee Smith, George C. Dunlap, Blanchette, Smith & Shelton, Edward Kliewer, Jr., Kliewer & Hood, Dallas, Tex., for petitioner.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Robert E. Williams, William Wachter, Attys., Washington, D. C., for respondent.

Before JONES and COLEMAN, Circuit Judges, and CHOATE, District Judge.

COLEMAN, Circuit Judge:

In this case the Board found that Delta Drilling Company violated Section 8(a) (5) and (1) of the National Labor Relations Act by refusing to bargain with the certified representative of its employees. The company filed its petition to review and set aside the order; the Board asks that the order be enforced in full. The record reveals that the election was not held, as the consent agreement specified, in accordance with the applicable procedures and policies of the Board. The Board therefore should have set the election aside. We deny enforcement.

Pursuant to the agreement, the consent election was conducted in August, 1966. Twenty ballots were cast for the union, fifteen for the employer, and five were challenged. Delta Drilling filed objections to the conduct of the election and requested a hearing. The Regional Director, after an ex parte investigation, sustained challenges to four ballots but otherwise overruled the employer's objections.

The employer filed exceptions to the report of the Regional Director, but these the Board refused to consider. A motion was then filed with the Director to reconsider his findings. A more extensive investigation followed, again ex parte, and the earlier ruling was reaffirmed. Thus, throughout the entire proceedings, the employer failed in its effort to obtain a full-scale hearing as to its objections, the nature of which will hereinafter be discussed.

Ultimately, in July, 1967, the Union filed an unfair labor practice charge, alleging a refusal to bargain, in violation of Section 8(a) (5) and (1). The employer answered and the General Counsel moved for judgment on the pleadings. After a show cause order, the Trial Examiner denied a hearing on the merits and entered judgment on the pleadings. The Board adopted the Trial Examiner's decision, February 2, 1968.

The circumstances which inspired the employer objections are as follows:

The election took place at several locations and lasted over a period of three days. On one day an agent of the Board, Jerry Dobbs, opened the polls at Rig No. 2 at 6:00 a. m., and then drove 95 miles to Rig No. 60, where he opened the polls at 8:00 a. m. After closing the polls there, he sealed the ballot box, placed it in his car, and began his return trip to Rig No. 2. While en route he stopped at the motel room of a Union representative to "freshen up". He remained in the room less than one hour. Upon his initial investigation, the Regional Director determined that the sealed ballot box remained in the car,

and as a result, there was no misconduct by Dobbs sufficient to suggest a violation of the election procedure.

The employer was not satisfied with this conclusion so the Regional Director conducted the more extensive investigation, inviting both parties to offer witnesses. The Director interviewed these witnesses and made this determination: Dobbs had met the Union representative Howell the day before the events in question. The election involved travel through sparsely populated country, so the Union representative volunteered the use of his motel room. Dobbs accepted this offer and on his journey to Rig No. 2, (with the ballot box from Rig No. 60 in his car), stopped at the motel. He parked the car in a parking lot next to the highway, left the ballot box in the back seat, and locked the car doors. Dobbs received directions to Howell's room from the motel owner, Williams. Williams did not recall Dobbs carrying anything with him. Both Dobbs and Howell told the Regional Director that Dobbs used the bathroom, made some phone calls, and engaged in conversation, but did not discuss the election.

While Dobbs was at the motel, B. W. Harden, a tool pusher for the company who had been in charge of the rig during the voting, arrived at the motel and saw Dobbs' car. He called the company vice-president and told him of Dobbs' being in Howell's room. He then observed Dobbs coming from the room but did not notice that he carried anything. The estimates of the time spent in the room varied from 15 minutes to 45 minutes.

Later that afternoon observers selected by both the employer and the Union examined the ballot box and expressed their satisfaction that it had not been tampered with.

In this status of the case, the company vigorously urges that the denial of an evidentiary hearing on its objection to the election was arbitrary and capricious, constituting a denial of procedural due process, was out of conformity with the requirements of the act itself in the denial of an evidentiary hearing as to substantial and material factual issues, and was not in conformity with the Board's established policy concerning the conduct that it requires of its agents in representation elections.

The Board responds that since the company agreed that the Regional Director's determination on all election matters shall be final and binding the Director's disposition of the objections cannot be overturned because they were not arbitrary or capricious or out of line with Board policy.

We agree with the Board that "[T]his case 'pivots on the agreement for consent election'", but do not reach the same result as the Board.

The controlling considerations are found in paragraphs 1 and 6 of the agreement, as quoted by the Board in its brief:

"1. SECRET BALLOT * * * Said election shall be held in accordance with the National Labor Relations Act, the Board's Rules and Regulations, *and the applicable procedures and policies of the Board,* [emphasis added] provided that the determinations of the Regional Director shall be final and binding upon any question, including questions as to the eligibility of voters, raised by any party hereto relating in any manner to the election * * *

"6. OBJECTIONS, CHALLENGES, REPORTS THEREON * * * Objections to the conduct of the election or conduct affecting the results of the election, or to a determination of representatives based on the results thereof, may be filed with the Regional Director within 5 days after the issuance of the Tally of Ballots * * The Regional Director shall investigate the matters contained in the objections and issue a report thereon * * * The method of investigation of objections and challenges, including the question whether a hearing should be

held in connection therewith, shall be determined by the Regional Director, whose decision shall be final and binding."

The key to the matter is the provision that the election should be held in accordance with "the applicable procedures and policies of the Board". Clearly, if the election was so held the decision of the Regional Director is final, binding, and immune to attack in this Court. On the contrary, if the Director countenanced conduct plainly in violation of established Board policy, then such action is arbitrary and cannot be approved here.

Board policy is to be ascertained from its acts and decisions. The location of this information requires no extensive search.

It will be remembered that the agreement for this consent election was made in 1966. The traveling election, conducted in several different places, took place on August 2, 3, and 4 of that year. *The Board rendered the decision here under review on February 2, 1968.*

On August 1, 1967, the Board decided the case of Athbro Precision Engineering Corp., 166 NLRB No. 116, 65 LRRM 1699. In that case the election was held on two shifts at the employer's plant. Shortly after the close of the first polling period, an employee who had already voted observed the Board Agent in charge of the election drinking beer with one of the Union representatives in a cafe located about a mile from the plant. The employee reported what he saw to his employer. The Board set aside the election and directed that a new one be held. We quote the following from the text of the Board decision:

"The Employer does not claim any violation of the integrity of the ballot box, nor does it claim that the conduct of the Board Agent had any effect upon the four employees who later voted. Rather, it objects that the behavior of the Board Agent gave an appearance of irregularity to the conduct of the election thus departing from the standards of integrity which the Board seeks to maintain.

"The Regional Director, while observing that a Board Agent in charge of an election should not fraternize with a representative of one of the parties in the interim between two balloting periods, nevertheless did not recommend setting aside the election. Although the Board Agent's conduct did not affect the votes of employees, we do not agree that this is the only test to apply.

"The Board in conducting representation elections must maintain and protect the integrity and neutrality of its procedures. The commission of an act by a Board Agent conducting an election which tends to destroy confidence in the Board's election process, or which could reasonably be interpreted as impugning the election standards we seek to maintain, is a sufficient basis for setting aside that election.

"In the circumstances of this case we hereby sustain the Employer's objections. Accordingly, we shall set aside the election and direct that a second election be held."

Only twenty-seven days after the Board rendered its decision in the case now under review, it decided Austill Waxed Paper Co., 169 NLRB No. 169, 67 LRRM 1366. In that case, an election was set aside and a new election ordered because the ballot box was left unsealed and unattended for from two to five minutes. The Regional Director recommended that the objections of the employer be overruled in their entirety, but the Board disagreed. Again, we quote from the text of the Board decision:

"Under the particular facts of this case, we do not agree with the Regional Director's conclusion that Employer's Objection 2, which raises the issue of the ballot box being left unsealed and unattended for from two to five minutes, should be overruled. This objection, which goes to the very heart

of the conduct of an election—maintaining the integrity of the ballot box—is not, in our opinion, the proper subject for litigation on an *ad hoc* basis. We do not believe that we should speculate on whether something did or did not occur while the ballot box was left wholly unattended. The Board through its entire history has gone to great lengths to establish and maintain the highest standards possible to avoid any taint of the balloting process; and where a situation exists, which, from its very nature, casts a doubt or cloud over the integrity of the ballot box itself, the practice has been, without hesitation, to set aside the election.

"It is our belief that the leaving of the ballot box unsealed and unattended for possibly as much as five minutes is a condition that relates directly to the integrity of the ballot box. It is the Board's responsibility to certify to the validity of its own balloting procedures, and, if it cannot, as here, we believe that in the interest of maintaining our high standards, there is no alternative but to set the election aside and direct a second election."

It is to be noted in *Athbro* that the employer claimed no violation of the integrity of the ballot box, nor did it claim that the conduct of the Board Agent had any effect upon the employees who later voted. The Board held that in conducting representation elections it "must maintain and protect the integrity and neutrality of its procedures". It added, "the commission of an act by a Board Agent conducting an election which tends to destroy confidence in the Board's election process, or which could reasonably be interpreted as impugning the election standards we seek to maintain, is a sufficient basis for setting aside that election".

In *Austill*, the Board said, "we do not believe that we should speculate on whether something did or did not occur * * * The Board through its entire history has gone to great lengths to establish and maintain the highest standards possible to avoid any taint of the balloting process; and where a situation exists, which, from its very nature, casts a doubt or cloud over the integrity of the ballot box itself, the practice has been, without hesitation, to set aside the election". The Board concluded that it had "no alternative but to set the election aside and direct a second election".

We think these cases, one before the Board decision in *Delta* and the other less than four weeks later, clearly articulate a commendable, indeed the only tenable, Board policy. Such policies are controlling until the Board announces a change and its reasons for the change, Rayonier, Incorporated, v. N. L. R. B., 5 Cir., 1967, 380 F.2d 187, 189.

Counsel for the Board attempts to distinguish *Athbro* because the agent in charge of the election was seen by an employee participating in the questionable act, whereas the witness in the present instance was a company supervisor and not an eligible voter. So, says counsel, "the Board's refusal to apply these principles here, where no impairment of voter confidence in the election process has been shown, is not a failure to conform to the *Athbro* policy, but rather a declination to extend that policy." We are of the view that the attempted distinction is not well taken. In *Athbro*, there was no claim that the integrity of the ballot box had been violated or that the conduct of the Agent had any effect upon those who later voted. Nevertheless, the election was set aside. It is suggested that *Austill* may be' distinguished because the ballot box was left unattended, whereas the Delta box was locked in an automobile and could not possibly have been tampered with. That does not dissipate the undisputed fact that a Board Agent, while an election was in process, and while he had the ballot box in his physical possession, was seen by a company supervisor going to, remaining in, and coming out of the room of a motel where presumably if he needed space

there was plenty available without closeting himself with a Union representative. There are no witnesses to what went on in the room but the two participants, neither of whom had any business participating in such activity, under such circumstances, while an election was in progress. The beer drinking in *Athbro* was open and public, at a time when the Board Agent was not in possession of the ballot box. There was mighty little chance, in *Austill*, that one could have developed a design to meddle with a ballot box in a public place and execute that design within two to five minutes.

■ We hold that an employer who enters into a consent agreement, relying upon the unflinching preservation of Board policy, is entitled to the benefit of that reliance, especially when the questionable activity of a Board Agent occurs without his knowledge or participation. Additionally, if the benefits and advantages of consent elections are to be maintained, preserved, and utilized, the employer is entitled to that same degree of confidence in the election process as counsel concedes the employee is entitled to have. Of course, the Board recognized this in *Athbro* when it sustained the employer's objections.

■ Applying the rationale of the Board's decisions, above discussed, we are left in no doubt that the conduct of the Board Agent, Dobbs, was a violation of Board policy, which the employer was entitled to have obeyed, inviolate, free of so much as the appearance of evil.

This conclusion obviates any necessity for discussing company contentions as to the necessity for an evidentiary hearing. We take advantage of the opportunity to point out that quite recently, November 12, 1968, this Court had occasion for a comprehensive discussion of the law on this subject, NLRB v. Smith Industries, 403 F.2d 889.

Without prejudice to the calling of a second election, if the Board should be so advised,

Enforcement denied.