PROVINCIAL HOUSE, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 76–1470.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 13, 1977.

Decided Dec. 30, 1977.

As Modified Feb. 9, 1978.

Julius M. Steiner, Pechner, Dorfman, Wolffe, Rounick & Cabot, Jerald R. Cureton, Philadelphia, Pa., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Vivian A. Miller, Washington, D. C., Bernard Gottfried, Director, Region 7, N. L. R. B., Detroit, Mich., for respondent.

Before EDWARDS and ENGEL, Circuit Judges, and GRAY,* Senior District Judge.

EDWARDS, Circuit Judge.

Petitioner, Provincial House, Inc., a nursing home located in Cass City, Michigan, petitions for review of a National Labor Relations Board order finding an unfair labor practice in petitioner's failure to bargain with a union which had been certified after winning an NLRB election. The Board filed a cross-petition for enforcement. The Board's order is reported at 222 N.L.R.B. No. 207 (1976).

The most important issue presented is petitioner Provincial's contention that a Board employee, investigating unfair labor practice complaints, failed to observe the required neutrality of the Board's procedures. The facts pertaining to this issue are essentially undisputed and are set out below from the Hearing Officer's Report and Recommendation, which was adopted by the Board:

> With the exception of conflicting testimony as to certain remarks, the facts offered at the hearing in support of Objection 2 are virtually without dispute. Thus, sometime in February, 1975, subsequent to the filing of the petition in this matter, the Petitioner also filed unfair labor practice charges in Case No. 7–CA–11773 involving the Employer's Cass City facility. The Petitioner's National Representative, Thomas Wojtala, had made arrangements with Board Agent Gregory Muzingo, who had been assigned to investigate the unfair labor practice case, to

---

* Honorable Frank Gray, Jr., Senior United States District Judge for the Middle District of Tennessee, sitting by designation.

interview Petitioner's witnesses on February 25, 1975. The arranged meeting place was the Wildwood Farms Restaurant at the intersection of M–81 and M–53, immediately outside Cass City, Michigan. The Wildwood Farms Restaurant from testimony, is a dual-level establishment. The upstairs area is comprised of two dining rooms with a bar in addition. The lower level consists of a meeting room which was described as approximately 25 feet by 50 feet in dimension.

Board Agent Muzingo was to meet the first witness to be proffered by the Petitioner in support of the charges at approximately 1:00 P.M. on that date. At approximately that time on February 25, 1975, Wojtala met Board Agent Muzingo at the restaurant and also found there two unit employees waiting to give affidavit testimony to the Board agent in support of the unfair labor practice case. Between 1:00 P.M. and 2:00 P.M., Board Agent Muzingo secured affidavit testimony from the first two employee witnesses, in the upstairs dining area of the restaurant. At approximately 2:00 P.M., as additional employees began to arrive, and in view of the fact that there were still other, non-involved, customers in the restaurant, Wojtala suggested that they all retire to the downstairs meeting room. In that lower level, Board Agent Muzingo, at a table at the extreme rear of the meeting room, continued his taking of affidavit testimony from employee witnesses as they arrived. Apparently, Wojtala had not made the arrangements for the specific employees to be interviewed by Muzingo. These arrangements had been made by employee adherents of the Petitioner.

During the time Board Agent Muzingo was securing affidavit testimony from employee witnesses at the rear of the downstairs meeting room, at the front, Wojtala proceeded to answer employee questions concerning the Petitioner's organizing campaign and the election. Wojtala testified that during the course of that afternoon and until 5:00 P.M., approximately 30 unit employees came

and went. Wojtala also advised arriving employees that, if they desired drinks, including alcoholic beverages, they could go to the bar upstairs, tell the bartender that the drinks were to be charged to Wojtala, and return downstairs with them. Wojtala admitted that several employees accepted his offer. No evidence was presented that Board Agent Muzingo either participated in the question and answer discussions conducted by Wojtala or had any kind of beverages. With the exception of one incident to be described hereinbelow, Board Agent Muzingo and Petitioner Representative Wojtala did not converse in the meeting room until Muzingo left between 4:30 and 4:45 P.M. that afternoon, after having secured six to eight employee affidavits.

About 4:00 P.M., Muzingo came to the front of the room, where Wojtala was speaking to approximately 18 employees and inquired whether an additional employee witness he was scheduled to meet had arrived. Wojtala told Muzingo that the employee he inquired about had not yet arrived. Wojtala then introduced Board Agent Muzingo to the employees present as an NLRB agent. According to Wojtala's best recollection, he then explained to the employees that the Petitioner had filed unfair labor charges against the Employer and explained the nature of those charges. He then told the employees that Board Agent Muzingo was presently investigating those charges and asked whether there was anyone else present who could possibly offer information in support of those charges. One employee volunteered to do so and accompanied Muzingo to the rear of the meeting room where Muzingo proceeded to take that employee's affidavit testimony. A few moments later, the last-scheduled witness arrived and Muzingo also interviewed that employee prior to leaving.

■ We measure the facts in this case against the Board's own rule:

The Board in conducting representation elections must maintain and protect the integrity and neutrality of its procedures.

The commission of an act by a Board Agent conducting an election which tends to destroy confidence in the Board's election process, or which could reasonably be interpreted as impugning the election standards we seek to maintain, is a sufficient basis for setting aside that election. *Athbro Precision Engineering Corp.,* 166 N.L.R.B. No. 116 (1967), *vacated, IUE v. NLRB,* 67 L.R.R.M. 2361, 57 LC ¶ 12,440 (D.D.C.1968), *acquiesced in,* 171 N.L.R.B. No. 4 (1968), *enforced, NLRB v. Athbro Precision Engineering Corp.,* 423 F.2d 573 (1st Cir. 1970).

 The facts show that the episode described above took place in the midst of the campaign preceding the NLRB election. The group of employees to whom the NLRB representative was introduced was 18 in number. The election took place 10 days later and the union won it by a substantial majority, 52–17. Thereafter, the employer contested the election and lost before the Board, and since has refused to comply with the NLRB's bargaining order in order to contest the Board's certification of the election results.

Contrary to the majority of the Board, we feel that the Board representative, whether inadvertently or not, allowed himself to be used in a manner which seriously affected the neutrality of the Board's procedures and that the conduct disclosed requires that this court refuse enforcement of the bargaining order pending another election.

We would like to be specific about the precise conduct which we feel carried the activity of the NLRB representative past the point of arguably defensible conduct, so as to represent a per se violation of the Board's neutrality rule. That point in our view came when the NLRB representative allowed himself to be introduced to the union organizational meeting.

We recognize that investigating unfair labor practice complaints is an important NLRB function which cannot be performed in a vacuum, that meeting halls are few in small towns like Cass City, and that union representatives are likely sources of information about witnesses concerning such complaints. While it would doubtless be preferable to keep unfair labor practice investigations completely separate in time and place from NLRB elections, the Board may find that degree of separation of its functions impossible in a real world. *See Amax Aluminum Extrusion Products v. NLRB,* 172 N.L.R.B. No. 149 (1968); *Isaacson-Carrico Mfg. Co.,* 200 N.L.R.B. No. 116 at 798–802 (1972).

Nonetheless, it should be possible for any NLRB representative to keep from becoming a part of a union organizing meeting. And when such a representative (voluntarily or involuntarily) becomes a part of such a meeting (absent extraordinary circumstances[1]), we think that NLRB neutrality, in either fact or appearance, has been so compromised as to warrant setting aside the election and holding a new one.

While we agree with the Board that the size of the union majority in this case was such as to make it quite unlikely that the NLRB representative's appearance at the meeting had any decisive effect on the result, we do not think that is the issue in this case. What we deal with here is an act by a Board Agent which tends to destroy "the neutrality of the Board's procedures." *Athbro Precision Engineering Corp.,* 166 N.L.R.B. No. 116, at 966 (1967).

In view of our decision on this issue, we reach no other issues sought to be presented.

The Board's petition for enforcement is denied, petitioner Provincial House, Inc.'s petition is granted, the Certification of Election is vacated, and the case is remanded to the Board for the prompt holding of a new election should the Board deem it appropriate.

1. An example might be the investigation of an unfair labor practice complaint that company-inspired violence had broken up previous union meetings.