**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**OSBORN TRANSPORTATION, INC., Respondent.**

**No. 78–1008.**

United States Court of Appeals, Fifth Circuit.

Feb. 23, 1979.

Rehearing Denied April 2, 1979.

Elliott Moore, Deputy Associate Gen. Counsel, Robert Sewell, Supervisor, Michael Murchison, Atty., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, N.L.R.B., Washington, D.C., for petitioner.

William M. Pate, Atlanta, Ga., for respondent.

Curtis L. Mack, Director Region 10, N.L.R.B., Atlanta, Ga., for other interested party.

Before MORGAN, RONEY and VANCE, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This case is before the court on petition of the National Labor Relations Board for enforcement of its order that Osborn Transportation, Inc. (the company) bargain collectively with a Teamster's local union (the union) certified by the Board after a representation election as the exclusive representative of certain of the company's employees.[1] The company, as respondent, argues principally that preelection conduct by the Board agent who conducted the election gave the appearance of favoring the union thus prejudicing the outcome of the election. The company also questions the Board's failure to consider certain affidavits submitted in support of the company's objections to the election or, alternatively, the Board's failure to direct a hearing on the objections relating to the conduct of its agent. Although we do not applaud the Board agent's conduct in this case and while we consider these facts to be perilously close to a per se violation of the Board's established policies, a careful review of the record convinces us that the Board acted reasonably and within the broad discretion accorded it in representation proceedings in overruling the company's objections and certifying the union. Consequently, we enforce the Board's order directing the company to bargain with the union.

The company, an Alabama corporation, is engaged in the interstate transportation of freight. On May 3, 5, and 7, 1976, pursuant to a Stipulation for Certification Upon Consent Election, the employees in the designated bargaining unit voted to determine whether the union should serve as their collective bargaining representative. The union prevailed by a vote of thirty-three to fourteen with ten challenged ballots, a number insufficient to affect the results of the election. On May 14, 1976, the company filed objections[2] to the election alleging, inter alia, that the Board agent who conducted the May 3–7 election had, in March

---

1. Teamsters Local Union 612, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, was certified as the exclusive representative of the employees in the following bargaining unit: "All over-the-road truck drivers employed by Respondent at its Gadsden, Alabama facility, but excluding owner-operators and their employees, mechanical shop employees, office clerical employees, guards and supervisors as defined in the Act."

2. The objections filed by the company charged (1) that the Board agent conducting the election previously indicated her bias for the union, (2) that the union, through employee organizers, threatened employees with physical harm and loss of employment, and (3) that persons unknown to the employer sabotaged certain equipment creating a climate of fear among employees. The Acting Regional Director's report also included an objection, not alleged but uncovered during the investigation, that one employee told others that the union initiation fee would be higher for those who did not vote for the union.

1976, investigated unfair labor practice charges filed by the union against the company and, during that investigation, had prominently identified herself and the Board with the union's campaign. Pursuant to Section 102.69(c) of the Board's Rules and Regulations, 29 C.F.R. § 102.69(c), the Acting Regional Director conducted an administrative investigation of the company's objections during which both parties were afforded an opportunity to submit evidence bearing on the issues. On the basis of his investigation, the Acting Regional Director issued a report recommending that the company's objections be overruled and that the union be certified as the employees' bargaining representative. The company filed timely exceptions to this report with the Board. On December 3, 1976, the Board, with one member dissenting,[3] adopted the Acting Regional Director's recommendation that the company's objections alleging misconduct by the Board agent be overruled but directing a hearing on the company's objection alleging that an employee organizer, who the company claimed was a union agent, threatened employees with retaliation if they failed to vote for the union. The Hearing Officer found no merit in the company's objection and recommended that the union be certified. On May 27, 1977, the Board adopted the Hearing Officer's findings and certified the union as the exclusive bargaining representative of all the company's over-the-road truck drivers.

 In order to test the validity of the Board's rulings on its objections to the election, the company refused to bargain with the certified union.[4] The union then filed

an unfair labor practice charge with the Board alleging that the company had refused to bargain in violation of Section 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (5) (1970). The company filed an answer admitting its refusal to bargain but challenging the certification of the union on the ground that the Board agent's preelection conduct had compromised the Board's impartiality in the election. In its answer the company also requested that the Board take official notice of the affidavits and statements submitted to and obtained by the Acting Regional Director during his investigation of the election objections. On July 13, 1977, the Board's General Counsel moved for summary judgment, alleging that the company was attempting to relitigate issues which were or could have been litigated in the underlying representation proceeding. After reviewing the company's response, on September 30, 1977, the Board issued its decision granting the General Counsel's motion for summary judgment and ordering the company to bargain with the union.[5] The Board seeks enforcement of its order in this proceeding. The company alleges both substantive and procedural errors in the Board's review of the company's objections to the election and contends that it did not violate the National Labor Relations Act when it refused to bargain with a union that had been improperly certified by the Board.

The company's first and primary contention is that the Board agent conducting the election prominently identified herself with the union's campaign thus creating an impression of Board partiality in violation of

---

3. Then Chairman Murphy, dissenting, would have sustained the company's objections to the Board agent's conduct as conveying an impression of partiality in the campaign. She found it unnecessary to reach the merits of the remaining objections. Chairman Murphy repeated her dissent in the other decisions rendered by the Board in this case.

4. Representation proceedings are not subject to direct review by this court. In order to secure judicial review of his objections to an election, the employer must refuse to bargain with the certified union thus committing an unfair labor practice and causing the Board to issue an

order to bargain requiring judicial enforcement. The representation case and the unfair labor practice case become one and the complete record is fully reviewable. *Home Town Foods, Inc. v. N. L. R. B.*, 416 F.2d 392, 393 n. 1 (5th Cir. 1969); *N. L. R. B. v. Golden Age Beverage Co.*, 415 F.2d 26, 28 (5th Cir. 1969); *Electra Mfg. Co. v. N. L. R. B.*, 408 F.2d 570, 572 (5th Cir. 1969).

5. The Board's order required the company to cease and desist from refusing to bargain with the union and to post appropriate notices.

established procedure and policy. The essential facts concerning the Board agent's conduct are not in dispute and can be stated briefly. Six weeks prior to the May 3–7 election, the same Board agent who later conducted the election was assigned to investigate unfair labor practice charges filed by the union against the company. As part of her investigation, the Board agent took affidavits from a number of the company's employees. Many of these affidavits were taken in a motel room rented by a union representative. On March 19, an employee was called by a discharged employee named in one of the unfair labor practice charges and was asked to come to the motel room where the union representative was registered. Complying with the request, the employee arrived at the motel room where he encountered approximately eight or nine persons, including two union representatives, five or six company employees, and the Board agent, whom the others addressed by her first name. Everyone present except the Board agent was drinking alcoholic beverages, and the employee, who had consumed four beers before his arrival, was offered and accepted two separate drinks. During the course of his stay, the employee spent approximately one hour giving his affidavit to the Board agent. Prior to giving his statement the employee, in the presence of the Board agent, engaged in an argument with a union representative over union dues.[6] The first half of the affidavit, which the employee gave while drinking his second drink, was given in the presence of the other employees and union representatives in the room. The remainder of the affidavit was given in private when the Board agent cleared the room because she had difficulty hearing the witness. Upon consideration of the company's objections, the Acting Regional Director concluded that while the taking of statements under these circumstances is not to be condoned, the agent's conduct did not in any manner identify the Board with the union in the employees' eyes.

We begin our discussion by noting that Congress has vested the Board with wide discretion in its conduct and supervision of representation elections and that its decision warrants special respect by reviewing courts. *N. L. R. B. v. A. J. Tower Co.,* 329 U.S. 324, 67 S.Ct. 324, 91 L.Ed. 322 (1946). "Thus, the only question presented to the Courts in an election review is whether the Board has reasonably exercised its discretion." *Pepperrell Mfg. Co. v. N. L. R. B.,* 403 F.2d 520 (5th Cir. 1968), *cert. denied,* 395 U.S. 922, 89 S.Ct. 1774, 23 L.Ed.2d 238 (1969). As long as the Board's decision is reasonable and based upon substantial evidence on the record considered as a whole, it is immaterial that this court may have reached a different conclusion had the matter been before us de novo. *N. L. R. B. v. Golden Age Beverage Co.,* 415 F.2d 26 (5th Cir. 1969). *See Universal Camera Corp. v. N. L. R. B.,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Home Town Foods v. N. L. R. B.,* 416 F.2d 392 (5th Cir. 1969); 29 U.S.C. § 160(e) and (f). This limited scope of review "is accorded Board findings of fact and mixed questions of fact and law because of the Board's experience in the specialized field of labor law." *Swearingen Aviation Corp. v. N. L. R. B.,* 568 F.2d 458, 463 (5th Cir. 1978).

We emphasize, however, that in exercising the discretion entrusted it in representation matters, the Board must faithfully adhere to the policies and procedures previously announced in its rules and decisions. "Such policies are controlling until the Board announces a change and its reasons for the change." *Delta Drilling Co. v. N. L. R. B.,* 406 F.2d 109, 113 (5th Cir. 1969); *Rayonier, Inc. v. N. L. R. B.,* 380 F.2d 187 (5th Cir. 1967). One such policy of the Board has been its utilization of a "laboratory conditions" standard for evaluating election campaign conduct:

6. The company contends that the Director's characterization of this discussion as an "argument concerning union dues" omits the fact that the discussion began with an effort by the union representative to give the employee a sales talk on the merits of unionization. We discuss the company's contention below.

In election proceedings, it is the Board's function to provide a laboratory in which an experiment may be conducted, under conditions as nearly ideal as possible, to determine the uninhibited desires of the employees. It is our duty to establish these conditions; it is also our duty to determine whether they have been fulfilled. When, in the rare extreme case, the standard drops too low, because of our fault or that of others, the requisite laboratory conditions are not present and the experiment must be conducted over again.

General Shoe Corp., 77 N.L.R.B. 124, 127 (1948); N. L. R. B. v. Houston Chronicle Publishing Co., 300 F.2d 273 (5th Cir. 1962). We iterate that our task is not to assess the wisdom of this policy but to determine whether its application by the Board is supported by substantial evidence. See Home Town Foods, Inc. v. N. L. R. B., supra, 416 F.2d at 394–95.

In deciding whether the Board agent's conduct in this case contaminated the "laboratory conditions" required in a representation election, we must apply the rule formulated by the Board in Athbro Precision Engineering Corp., 166 N.L.R.B. 116 (1967) and approved by this court in Delta Drilling Co. v. N. L. R. B., 406 F.2d 109 (5th Cir. 1969). In Athbro the Board agent who conducted the election was observed between polling periods drinking a beer with a union representative. Although the employer did not claim a violation of the integrity of the ballot box nor allege that the agent's conduct prejudiced the outcome of the election, the Board nevertheless overturned the election.

The Board in conducting representation elections must maintain and protect the integrity and neutrality of its procedures. The commission of an act by the Board Agent conducting an election which tends to destroy confidence in the Board's election process, or which could reasonably be interpreted as impugning the election standards we seek to maintain, is a sufficient basis for setting aside that election. Athbro, supra. In Delta Drilling this court overturned an election where the Board agent, en route between polling places with the ballot box in his possession, stopped at the motel room of a union representative to "freshen up." The court held that the Board agent's conduct violated the integrity of the ballot box and impaired the neutrality of the Board's procedures. The company insists that the Athbro rule, as approved by this court, requires that the present election be set aside.

We are of the opinion, however, that the Board could reasonably decide that the Board agent's conduct in this case did not violate the Athbro neutrality rule.[7] In both Athbro and Delta Drilling the Board agent was observed fraternizing with a union representative on the day of the election and in neither case was the agent engaged in pursuing an official function when he associated with the union representative. In this case, however, the Board agent went to the union representative's motel room for the express purpose of conducting an official investigation of unfair labor practice charges filed by the union against the company. Compare N. L. R. B. v. Dobbs Houses, Inc., 435 F.2d 704 (5th Cir. 1970); N. L. R. B. v. Capitan Drilling Co., 408 F.2d 676 (5th Cir. 1969). The fact that the Board agent investigated these charges during the preelection period and that this same agent later conducted the election proceedings does not require that the election be overturned. Kimco Auto Products, 184 N.L.R.B. 60 n. 1 (1970); Amax Aluminum Extrusion Products, 172 N.L.R.B. 1401 (1968), enforced, 421 F.2d 394 (5th Cir. 1970).[8] The

---

7. Although the Board did not refer to Athbro or detail its reasons for distinguishing that case, the company's exceptions to the Director's report on objections cited the Athbro line of cases and we are confident that the Board did consider the issue. See N. L. R. B. v. Dobbs Houses, Inc., 435 F.2d 704, 705 (5th Cir. 1970).

8. "While it would doubtless be preferable to keep unfair labor practice investigations completely separate in time and place from NLRB elections, the Board may find that degree of separation of its functions impossible in a real world." Provincial House, Inc. v. N. L. R. B., 568 F.2d 8 (6th Cir. 1977).

taking of statements from union-supplied witnesses in the union-provided motel room was not per se objectionable and created no greater impression of partiality than if the Board agent had taken statements from company-supplied witnesses at the company's premises. Furthermore, although the employees and union representatives were drinking alcoholic beverages in the Board agent's presence and during the time she took the affidavits, there was no allegation that the agent accepted a drink while in the motel room. There is no evidence that the agent in this case engaged in the kind of public fraternization with one of the parties to the election condemned in *Athbro* and *Delta Drilling. See also Fresh'nd Aire Co.,* 111 N.L.R.B. 158, *enforcement denied on other grounds,* 226 F.2d 737 (7th Cir. 1955). We hold that the Board could reasonably conclude that its agent's conduct in taking affidavits in a union-supplied room six weeks before the election did not compromise the integrity and neutrality of the Board's procedures.

The company refers us to the Sixth Circuit's decision in *Provincial House, Inc. v. N. L. R. B.,* 568 F.2d 8 (6th Cir. 1977), which involved a factual matrix very similar to our own. The company insists that *Provincial House* is indistinguishable from this case and argues that that court properly applied the *Athbro* neutrality rule. The Board, on the other hand, maintains that *Provincial House,* though correctly decided, involves conduct not found in this case and argues that the opinion tends to support the Board's conclusion. Although in *Provincial House* the Board agent conducted his investigation only ten days before the election and in the context of a union organizational meeting, we are not certain that the differences in time and place presented in our case would lead the *Provincial House* court

to a different result. Nonetheless, we are convinced that the agent's conduct in this case did not violate the neutrality rule announced in *Athbro* and did not require the Board to set aside the election.

The company's second argument concerns the Board's failure to take official notice of the affidavits [9] and statements submitted by the company to the Acting Regional Director during his investigation of the election objections. The issue of whether or not affidavits submitted in support of a company's objections should be forwarded to the Board as part of the record in the case was squarely faced by this court in *Southwestern Portland Cement Co. v. N. L. R. B.,* 407 F.2d 131 (5th Cir.), *cert. denied,* 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71 (1969), an opinion authored by the present writer. We held there that the Board's Rules and Regulations required that the Regional Director send such affidavits to the Board as part of the record in the proceedings. The rule relied on by the court was found in 29 C.F.R. § 102.68:

> The record in the proceeding shall consist of: The petition, notice of hearing, with affidavit of service thereof, motions, rulings, orders, the stenographic report of the hearing and of any oral arguments before the regional director, stipulations, exhibits, documentary evidence, affidavits of service, depositions, and any briefs or other documents submitted by the parties to the regional director.

We were of the opinion that such affidavits are certainly "other documents submitted by the parties to the Regional Director."

Section 102.68 was later amended by the Board and the words "legal memoranda" were substituted for the words "other documents." *See* 29 C.F.R. § 102.68 (1977). Without mentioning this change in lan-

---

**9.** Although the company submitted thirteen affidavits in support of its objections to the election, it is primarily interested in the facts stated in the affidavit of key witness Wayne Kennedy. The company does not challenge Board's refusal to notice the affidavits taken by Board personnel. In *N. L. R. B. v. Golden Age Beverage Co.,* 415 F.2d 26, 34 (5th Cir. 1969), enforcing 167 N.L.R.B 151 (1967), this court held that

employee affidavits independently acquired by the Board's investigation are, for reasons of confidentiality, properly excluded from the record on appeal and as privileged against disclosure to employers. The company, however, reasons that this confidentiality rule does not apply to the affidavit the company itself submitted to the Board.

guage, the company asserts that its affidavits were clearly "documentary evidence" within the meaning of the current version of section 102.68. Responding to this contention, the Board points to section 102.-69(g) which permits a party excepting to a regional director's report on objections to "append to its submission to the Board copies of documents it has timely submitted to the regional director and which were not included in the report or decision." 29 C.F.R. § 102.69 (1977). Because the company failed to so append, the Board argues that the affidavit was not included in the record before the Board. There is support for the Board's position. *See Prestolite Wire Division*, 226 N.L.R.B. 62 (1976).

■ In *Southwestern Portland* we determined that the affidavits should have been included in the record before the Board. However, because the contents of the affidavits were set forth in the company's exceptions to the regional director's report, we held that the error was harmless. In this case the contents of the affidavit in question were also stated fully in the company's exceptions to the report on objections. We again conclude, therefore, that any error in failing to include the affidavit in the record was harmless.[10] Because of our holding, we need not reach the question of whether the affidavit was "documentary evidence" and therefore part of the record or was a "document" which should have been appended to the list of exceptions to the Acting Regional Director's Report.

We are left only with the company's claim that, should we sustain the Board's exclusion of the affidavit from the record, we should at least direct a hearing affording the company an opportunity to prove the facts omitted in the Acting Regional Director's summarization of the affidavit.

■ No post-election evidentiary hearing in a representation proceeding is

required under the Labor Management Relations Act. The Board's Rules and Regulations, however, do provide for a hearing when "substantial and material factual issues" are raised in the objections to the election. 29 C.F.R. § 102.69(f) (1977). Under this regulation, an objecting party must supply the Board with specific evidence which prima facie would warrant setting aside the election. *Southwestern Portland Cement Co. v. N. L. R. B., supra*, 407 F.2d at 135. "A hearing is unnecessary . . where if all the facts contended for by the objecting party 'were credited no ground is shown which would warrant setting aside the election.' " *N. L. R. B. v. Smith Industries, Inc.*, 403 F.2d 889, 892 (5th Cir. 1968), quoting *N. L. R. B. v. Bata Shoe Co.*, 377 F.2d 821, 826 (4th Cir. 1967). Because of the wide degree of discretion accorded the Board in representation matters, considerable weight must be assigned to its determinations regarding the existence or nonexistence of substantial and material factual issues. *N. L. R. B. v. Golden Age Beverage Co., supra*, 415 F.2d at 33; *accord, N. L. R. B. v. Handy Hardware Wholesale, Inc.*, 542 F.2d 935, 937 (5th Cir. 1976).

In the summary of the affidavit set forth in his report on objections, the Acting Regional Director noted the affiant's statement that he "engaged in an argument concerning union dues with a [union representative] in the presence of the Board agent." The company asserts that this "argument" began with an effort by the union representative to give the affiant a sales talk on the merits of unionization. Apart from this omission, the company concedes the correctness of the Director's summary of the affidavit.

■ We have already determined that the agent's conduct in taking employee affidavits in this atmosphere, though not prudent, did not violate the Board's neutrality rule. The addition of the fact that the

---

**10.** The company distinguishes *Southwestern Portland* by asserting that in the present case the facts in the affidavit show a sufficient basis for setting aside the election whereas in *Southwestern Portland* the facts stated in the affidavit did not show sufficient grounds. While we

do not necessarily accept this distinction, we note our conclusion that the facts omitted in the summary of the affidavit, even if credited, would not require setting aside the election. Thus, the company's attempted distinction is unacceptable.

union representative solicited an employee while in the room does not significantly and materially alter the impression given by the Director's summary. We find that the Board did not abuse its discretion in determining that this offer of proof is insufficient to warrant an evidentiary hearing.

ENFORCED.