**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FENWAY CAMBRIDGE MOTOR HOTEL d/b/a Howard Johnson's Motor Lodge, Respondent.**

No. 78–1472.

United States Court of Appeals, First Circuit.

Argued April 4, 1979.

Decided July 10, 1979.

and desist from the unfair labor practice found by the Board, that it bargain with the Hotel, Restaurant, Institutional Employees and Bartenders Union, Local 26, AFL–CIO (Union), and that it post appropriate notices. The Board found, after a consent election, that the Company refused to bargain collectively with the Union in violation of 29 U.S.C. § 158(a)(5) and (1). The Company maintains that it need not recognize the Union because the election was improperly conducted and thus invalid. It argues that the Board abused its discretion in certifying the election because the requisite laboratory conditions were infected by four instances of Board agent misconduct, that each purported transgression alone was significant enough to invalidate the election and that, when the four errors are viewed together, the unfairness of the election becomes all the more glaring. In the alternative, the Company takes the position that the Board abused its discretion in refusing to hold an evidentiary hearing on the Company's objections to the election.

The Board agent who conducted the election was an inexperienced law student, working with the Board for the summer. Because a segment of the electorate was not fully conversant in the English language, the notices of the election were printed in Spanish, Portuguese and English. The Company filed timely objections to the election,[1] alleging that it was invalid due to the Board agent's misconduct: (1) delaying the opening of the polls for two to five minutes; (2) permitting the Union observer to list the challenged voters at the outset of the election; (3) standing during much of the voting so as to obstruct the observers' view and instructing one employee to vote for the Union; and (4) failing to respond to the Company observer's request that the agent retrieve the voting list which the Union observer took with him when he left the polling area shortly after the election terminated.[2]

William M. Bernstein, Washington, D. C., with whom John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and John G. Elligers, Washington, D. C., on brief, for petitioner.

Murray S. Freeman, Boston, Mass., with whom David E. Watson and Nutter, McClennen & Fish, Boston, Mass., on brief, for respondent.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

The issues in this case focus on the conduct of a disputed election. The National Labor Relations Board (Board or NLRB) seeks enforcement of its order that Fenway Cambridge Motor Hotel (Company) cease

---

1. The result of the election held on August 19, 1977, was: fifty votes for the Union; thirty-three against the Union; thirteen votes challenged; and two votes void.

2. It appears that the Union observer, a male, took the list with him into the lavatory. This may explain the female agent's reluctance to follow him immediately. This lavatory episode does not affect the laboratory conditions.

The Regional Director conducted an investigation of the Company's objections and found against it on all four, recommending that the election be certified. The Company took exceptions to the Regional Director's report, but these were rejected by the Board. On February 9, 1978, the Board granted General Counsel's motion for summary judgment and certified the election. The Company refused to bargain with the Union and this refusal resulted in the Board's finding of an unfair labor practice. The Board now seeks enforcement of its order.

Of the four objections to the election raised by the Company, only one merits serious consideration: its claim that during the election, the fledgling Board agent instructed at least one employee, Athanasios Kokolis, to vote for the Union. In his report, the Regional Director explored this objection in detail. He examined affidavits submitted by Kokolis and took testimony from the agent and the election observers for the Union and Company. Kokolis stated in his affidavit that when the agent gave him his ballot, she pointed to the "Yes" choice and instructed him to place his mark there. Kokolis became angry and asked her what she had said, and, according to him, she then pointed to both choices. The agent's testimony was that she neither recalled Kokolis nor did she ever instruct any voter to cast a ballot for the Union. The Union's election observer testified that Kokolis said nothing when he presented himself at the poll and the Company's election observer testified that he did not hear anything which may have been said between the agent and Kokolis.

While the Regional Director acknowledged the severity of the allegation against the agent and was fully cognizant of the conflict in testimony concerning the alleged incident, he found it unnecessary to make a credibility judgment and determine what did occur. In his view, even though a "serious breach may have occurred in the laboratory conditions required by the Board for the conduct of its elections," there was no need for a credibility determination and the election need not be set aside because (a) those present had already voted; (b) no other voters were in the polling area at the time; (c) Kokolis was not swayed by the agent's purported instruction; and (d) Kokolis told no one of the alleged voting instruction until three days after the election. The Regional Director concluded:

> Based on the above, it is clear that even if the Board agent made the statements attributed to her and if these statements were deemed to have been an improper instruction, no voter except Kokolis knew of it prior to the closing of the polls. Moreover, the instructions did not affect Kokolis' own vote. Accordingly, even if credited, Kokolis testimony would not establish a ground for setting aside the election.

 As noted in *NLRB v. New England Lithographic Co.,* 589 F.2d 29, 31 (1st Cir. 1978), the Board is vested with a wide degree of discretion with respect to establishing the safeguards and procedures for elections and our standard of reviewing whether an election was properly certified is limited to the narrow question of whether the Board abused its broad discretion in certifying the election. *NLRB v. A. J. Tower Co.,* 329 U.S. 324, 330, 67 S.Ct. 324, 91 L.Ed. 322 (1946); *NLRB v. S. Prawer & Co.,* 584 F.2d 1099, 1101 (1st Cir. 1978); *NLRB v. O. S. Walker Co.,* 469 F.2d 813, 817 (1st Cir. 1972).

 In determining whether there was an abuse of discretion, we first note that the Regional Director erred in applying only an "impact" standard to determine whether the elective process was contaminated. The correct standard to apply in determining whether a Board agent's misconduct invalidated an election is articulated in *Athbro Precision Engineering Corp.,* 166 N.L.R.B. 966 (1967), *vacated sub nom. IUE v. NLRB,* 67 LRRM 2361 (D.D.C.1968), *acquiesced in* 171 N.L.R.B. No. 4 (1968), *enforced, NLRB v. Athbro Precision Engineering Corp.,* 423 F.2d 573 (1st Cir. 1970).

While the procedural history of *Athbro* is curious,[3] its holding continues to be the yardstick against which misdeeds of Board agents are measured. *See NLRB v. Osborn Transportation, Inc.,* 589 F.2d 1275, 1280–81 (5th Cir. 1979); *Provincial House, Inc. v. NLRB,* 568 F.2d 8, 10–11 (6th Cir. 1977); *Delta Drilling Co. v. NLRB,* 406 F.2d 109, 112–14 (5th Cir. 1969). In *Athbro,* the Board agent conducting the election was observed between polling periods drinking beer with a union representative. The Board set aside the election, rejecting the impact of the conduct on the elections as the sole test.

Although the Board Agent's conduct did not affect the votes of employees, we do not agree that this is the only test to apply.

The Board in conducting representation elections must maintain and protect the integrity and neutrality of its procedures. The commission of an act by a Board Agent conducting an election which tends to destroy confidence in the Board's election process, or which could reasonably be interpreted as impugning the election standards we seek to maintain, is a sufficient basis for setting aside that election.

*Athbro, supra,* 166 N.L.R.B. at 966. It is the Company's position that the *Athbro* rule requires that the election be set aside, or at the very least, that a hearing be held to resolve the credibility determination left unanswered by the Regional Director.

The Board in its brief suggests that there have been more egregious transgressions committed by board agents during elections which were considered harmless, citing *Abbott Laboratories v. NLRB,* 540 F.2d 662 (4th Cir. 1976); *NLRB v. Wabash Transformer Corp.,* 509 F.2d 647 (8th Cir.), *cert. denied,* 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 44 (1975); and *NLRB v. Dobbs Houses, Inc.,* 435 F.2d 704 (5th Cir. 1970). We do not countenance the view that, in effect, while this incident may have been bad, it should be excused because there have been far worse wrongs that have slipped by the Board.

■ We believe that the proper approach, and indeed the one followed in the above-cited cases, is to assess on a case by case basis whether the alleged misconduct "tends to destroy confidence in the Board's election process" or "could reasonably be interpreted as impugning the election standards" sought to be maintained. *Athbro, supra,* 166 N.L.R.B. at 966. The conduct here, unlike public imbibing with a union representative, was not seen (or heard) by anyone except the one voter. While the Regional Director was imprecise in his handling of this issue, we cannot say that the Board abused its discretion in certifying the election. Examined in light of the *Athbro* standard, the facts reveal that the Board could reasonably decide that the neutrality of the Board's procedures was not compromised by the agent's purported statement to the employee. Assuming that Kokolis' affidavits reflect the truth, he clearly indicated that the agent immediately cured whatever contamination of the election process she might have caused when she informed him that he was free to check either the "Yes" or "No" box. Given that no other complaints of this nature were presented by any of the other some one hundred voters, that no one else was a party to the alleged conversation, and that Kokolis stated that he was not influenced by the agent's conduct, we consider this case distinguishable from *Athbro, supra,* 166 N.L.R.B. at 966.[4]

---

**3.** In *IUE v. NLRB,* 67 LRRM 2361 (D.D.C.1968), the district court granted an injunction to the union, ordering the Board to certify the election and the Board acquiesced in that decision, 171 N.L.R.B. No. 4 (1968). In *NLRB v. Athbro Precision Engineering Corp.,* 423 F.2d 573 (1st Cir. 1970), the employer, who had not appealed the district court decision, sought to have the bargaining order based on the certification set aside. We held that, because there had been no appeal from the district court's judgment, we would not do so.

**4.** Having resolved the case on the ground that even were the affidavits probative they would not warrant setting aside the election, we need not and do not reach the Board's argument that the affidavits are not properly a part of the record.

██ We next examine the Company's fallback argument, that it was entitled to an evidentiary hearing concerning the allegation of board agent misconduct. The Board has a great degree of discretion in determining whether a hearing is required, *NLRB v. New England Lithographic Co., supra,* 589 F.2d at 35, and one is required only where substantial and material factual issues exist, 29 C.F.R. § 102.69(d); *NLRB v. S. Prawer & Co., supra,* 584 F.2d at 1102. The Company had the burden of coming forward with evidence which would prima facie warrant setting aside the election, *NLRB v. O. S. Walker Co., supra,* 469 F.2d at 818, and an offer of proof which shows merely a difference of opinion with the Regional Director's inferences and opinions will not suffice. *NLRB v. New England Lithographic Co., supra,* 589 F.2d at 35. The Board decided that the exceptions proffered by the Company did not meet these strict requirements and we agree.

Here, a factual question does linger—whether the Board agent or employee Kokolis was telling the truth concerning the purported electioneering. However, even if this issue were resolved in favor of Kokolis, it would not warrant prima facie setting aside the election. The Company did not offer any newly discovered evidence or point to previously unavailable evidence or plead special circumstances. It merely sought to relitigate this issue. This was not sufficient to justify an evidentiary hearing.

██ We turn briefly to the other objections to the election pressed by the Company. The Company's charge that the election should be set aside because there was a two to five minute delay in opening the polls is totally without merit. In the first place, there is evidence that the Company's observer had a part in delaying the opening and, in the second place, the Company failed to affirmatively show that a number of voters, sufficient to upset the result of the election, were disenfranchised as a result of the delay. *NLRB v. L. D. McFarland Co.,* 572 F.2d 256, 260 (9th Cir. 1978),

*cert. denied,* 439 U.S. 911, 99 S.Ct. 280, 58 L.Ed.2d 257 (1979).

██ The Regional Director rejected the Company's claim that the election ought to be set aside because the Union observer kept a list of challenged voters during the first fifteen to thirty minutes of the election. We agree with the Regional Director. This situation is not comparable to the forbidden practice of recording the names of all who vote. The conduct occurred for a short time, pertained to only one (according to the Union observer) or five (according to the Company observer) challenged voters, and ceased at the Board agent's command. The Regional Director correctly concluded that the effect of keeping the list was *de minimis. See Robert's Tours, Inc. v. NLRB,* 578 F.2d 242, 244 (9th Cir. 1978); *Tom Brown Drilling Co.,* 172 N.L.R.B. 1267 (1968).

██ During much of the four hour election period, the Board agent stood as she explained the mechanics of voting to the employees. Although the Company observer requested that she stay seated as the Board manual suggests, she did not do so. The Company argues that this is such a significant departure from Board procedure as to require a new election. However, as noted by the Regional Director, the Company produced no evidence that the agent's instructions were at any time inaudible or that any employee was confused or misled by the instructions, with the exception of employee Kokolis, discussed *supra.* This objection borders on the frivolous.

██ Finally, the Company contends that, if doubt exists as to the validity of the election, the fact that the Union observer left the polling area after the polls closed for five minutes with the official voting list and that the Board agent did not promptly act on the Company observer's request that the list be retrieved, should swing the pendulum towards setting aside the election. This is not a pendulum swinging objection. Neither case law nor logic supports this position. The Regional Director found and

we concur that there was no evidence that the list was altered in any way.[5]

We conclude that the Board did not abuse its discretion in determining that these objections, viewed separately or as a whole, did not warrant setting aside the election.

*The order of the National Labor Relations Board shall be enforced.*