816 F.2d 672
 125 L.R.R.M. (BNA) 2152, 107 Lab.Cas. P 10,094
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
1199, National Union of Hospital and Health Care Employees,
AFL-CIO, Intervenor,
v.
MATTIE C. HALL HEALTH CARE CENTER, Respondent.
 No. 86-1206.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 3, 1987.
Decided April 10, 1987.
 
 Before HALL and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 Richard M. Kobdish, Jr. (Rebecca L. Price; Johnson & Swanson, on brief), for Mattie C. Hall Health Care Center.
 Marc Benjamin Seidman, National Labor Relations Board (Rosemary M. Collyer, General Counsel; John E. Higgins, Deputy General Counsel; Robert E. Allen, Associate General Counsel; Elliott Moore, Deputy Associate General Counsel; Barbara A. Atkin, Supervisory Attorney, on brief), for National Labor Relations Board.
 PER CURIAM:
 
 
 1
 The National Labor Relations Board petitions for enforcement of its order requiring the Mattie C. Hall Health Care Center to engage in collective bargaining with 1199, National Union of Hospital and Health Care Employees as the representative of service and maintenance employees at the Center's Aiken, South Carolina, facility. The Board on a summary judgment motion determined that the Center's refusal to bargain violated Sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act. 29 U.S.C. Sec. 158(a)(1), (5). The Center admits its refusal to bargain but argues that the Board improperly certified the Union. It argues that the Board erred in failing to set aside the election because misconduct of the Board's agent during the voting sessions and pre-election misconduct of Union representatives and pro-Union employees tainted the outcome of the vote. It also contends that in allowing the election results to stand, the Board has impermissibly departed from one of its recently established precedents. We disagree with these contentions and grant enforcement of the Board's order.
 
 
 2
 The Board conducted an election in June 1985 which the Union won by a margin of two votes. The Center first argues that the Board's agent improperly closed the polls two minutes early, forcing two voters to cast challenged ballots. The parties later stipulated, however, that both voters were eligible and their votes were counted. Substantial evidence therefore supports the Board's finding that the alleged early closing of the polls had no effect on the outcome of the election. See NLRB v. Daniel Construction Co., a Division of Daniel International Corp. 731 F.2d 191, 193 (4th Cir.1984) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951)).
 
 
 3
 The Center next contends that the Board's agent improperly exhibited a pro-Union bias during the election procedures. It presented evidence that the agent uttered disparaging remarks concerning the Board's "certification on conduct of election" procedures, that he permitted election observers to watch television during the afternoon voting session, and that he exhibited impatience in his desire to conclude the vote-counting process because he had a "long ride home." After reviewing this evidence, the Board adopted the factual findings of the Regional Director that: (1) the agent's remarks about the Board's certification procedures occurred after the election was over and therefore could not have compromised the integrity of the election process; (2) there was no evidence that the agent was inattentive during the voting or that the television set distracted the voters; and (3) there was no evidence that the agent actually handled the post-election procedures in a hurried manner. These findings are supported by substantial evidence. Although the agent's conduct was far from ideal, the Center's evidence established little more than nonchalance and, perhaps, rudeness on the agent's part. While his conduct may have presented the Board with an internal obligation to discipline its employee, we agree that it does not warrant setting aside the election. See Abbott Laboratories, Ross Laboratories Division v. NLRB, 540 F.2d 662, 665 n. 1 (4th Cir.1976); see also NLRB v. Fenway Cambridge Motor Hotel, 601 F.2d 33, 37 (1st Cir.1979) (employing case-by-case analysis to determine whether alleged misconduct of Board agent "tend[ed] to destroy confidence in the Board's election process" or "could reasonably be interpreted as impugning the [Board's] election standards").
 
 
 4
 The Center also contends that the Union's misconduct interfered with the election process. It presented evidence that Union agents called and visited employees at their homes in an attempt to persuade them to vote for the Union, and on one occasion they followed an employee for two or three miles as she drove from the Center to her home. There was, however, no evidence of threats or intimidation associated with any of these incidents. We agree with the Board that the Union's personal contacts did not exceed that which is normal and ordinarily permissible in a representation campaign. See Abbott Laboratories, 540 F.2d at 665 n. 1; NLRB v. Golden Age Beverage Co., 415 F.2d 26, 30-31 (5th Cir.1969); cf. NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 113 (1956) ("right of self-organization depends in some measure on the ability of employees to learn the advantages of self-organization from others").
 
 
 5
 The Center contends, however, that in addition to the challenged improper contact by Union agents, pro-Union employees on six separate occasions engaged in pre-election activities designed to coerce their fellow employees into voting for the Union. The Board examined the character and circumstances of each alleged instance of employee misconduct and concluded that none of the isolated incidents provided a basis for setting aside the election. We agree. The incidents were not directly attributable to the Union nor of sufficient magnitude to negate the employees' exercise of free choice at the ballot box.[1] See NLRB v. Georgetown Dress Corp., 537 F.2d 1239, 1242 (4th Cir.1976); see also Abbott Laboratories, 540 F.2d at 667 (in deciding whether employee threats justify overturning an election the factual determinations of the hearing officer are entitled to great deference); NLRB v. White Knight Manufacturing Co., 474 F.2d 1064, 1068 (5th Cir.1973) (pre-election threats by pro-Union employees characterized as mere verbal excess typical of a representation campaign).
 
 
 6
 Finally, the Center contends that by refusing to set aside the election on the basis of these described incidents, the Board has abandoned without explanation a recent precedent established in Bristol Textile Co., 277 N.L.R.B. No. 182; 1985-86 N.L.R.B. Dec. (CCH) p 17,714 (1986). There is simply no merit to this argument. The present case is distinguishable from Bristol Textile on its facts, the findings entered below, and the applicable law.
 
 
 7
 In view of the above, enforcement of the Board's order is granted.
 
 
 8
 ENFORCEMENT GRANTED.
 
 
 
 [1]
 It is true that in one particular incident three female employees became frightened when they were approached by pro-Union employees near the entrance to the Center. The Board found, however, that the approaching supporters intended only to distribute pro-Union leaflets and that the three employees misunderstood their intentions. This finding is supported by substantial evidence in the record and we decline to upset it