NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

GULF STATES CANNERS, INC., Respondent.

No. 78–1162.

United States Court of Appeals, Fifth Circuit.

Dec. 7, 1978.

---

Elliott Moore, Deputy Assoc. Gen. Counsel, Marjorie Gofreed, Supervisor, Christopher Katzenbach, Atty., John S. Irving, Gen Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Assoc. Gen. Counsel, N.L.R.B., Washington, D. C., for petitioner.

Jolly, Miller & Milam, Paul O. Miller, III, James R. Lockard, Jackson, Miss., for respondent.

Charles M. Paschal Jr., Director Region 15, N.L.R.B., New Orleans, La., for other interested party.

Before COLEMAN, CLARK, and RUBIN, Circuit Judges.

CHARLES CLARK, Circuit Judge:

On December 9, 1976, the employees of the Gulf States Canners, Inc., facility in Clinton, Mississippi, voted to determine whether the International Brotherhood of Teamsters, Local No. 891, should serve as their collective bargaining representative. The Union won the election by a vote of twenty to sixteen. Gulf Canners filed timely objections to the conduct of the Union during the pre-election period, but the National Labor Relations Board (the Board) rejected these arguments and certified the Union as the exclusive bargaining agents of Gulf Canners employees. The Union requested Gulf Canners to conduct contract negotiations with it, and the Company refused, claiming that the Board had erred in overruling its objections to the election. The Union then filed a complaint charging Gulf Canners with unfair labor practices as a result of this refusal. The Board, acting without a hearing, accepted the Union's arguments and ordered Gulf Canners to conduct contract negotiations with the Union. The Board has applied for enforcement of this order.

Gulf Canners initially asserted numerous instances of misconduct on the part of the Union, but has raised only one objection in

this enforcement proceeding. Gulf Canners claims that certain payments the Union made to Gulf Canners' employees vitiate the election results. The record shows that, prior to the election, the Union provided approximately $24 worth of gasoline to one Gulf Canners' employee in the voting unit and $6.88 worth of gasoline to another. The Union claimed the purchases of gasoline were to compensate for fuel consumed in traveling to the Union's meetings. The Board, adopting the findings of its regional director, held that, regardless of whether the purchases were as gifts or for reimbursement of expenses, they did not warrant setting aside the election.

■ In reaching his determination on this issue, the regional director concluded that the election results must stand unless Gulf Canners shows that the Union, in making the gifts, intended to influence the outcome of the election. Gulf Canners argues that the regional director erred in applying this intent test. We agree.

This court has held that union elections should be conducted under laboratory conditions and that an election must be invalidated upon a finding of a substantial breach in those conditions. *NLRB v. Handy Hardware Wholesale, Inc.*, 542 F.2d 935, 938 (5th Cir. 1976), *cert. denied*, 431 U.S. 954, 97 S.Ct. 2675, 53 L.Ed.2d 271 (1977); *Home Town Foods, Inc. v. NLRB*, 416 F.2d 392, 396 (5th Cir. 1969). Unlawful acts will taint an election if those acts "interfered with the employees' exercise of free choice to such an extent that they materially affected the results of an election." *NLRB v. Sumter Plywood Corporation*, 535 F.2d 917, 920 (5th Cir. 1976) (quoting *NLRB v. Golden Age Beverage Co.*, 415 F.2d 26, 30 (5th Cir. 1969) ), *cert. denied*, 429 U.S. 1092, 97 S.Ct. 1105, 51 L.Ed.2d 538 (1977).

The intent test is inconsistent with the logic behind these holdings. The effects of an act intended to influence an election may be so minimal that the outcome remains unaffected. Conversely an unintentional act may have such a deleterious effect on the conduct of an election that the result does not reflect the voters' free will.

In determining whether an election should be invalidated, the focus should be on the effects of a particular act on the electorate rather than on the actor's intent.

■ We are aware that, in many instances, assessing the effect of a particular action on the electorate could be a difficult, if not impossible, task. This is because detecting the subjective reaction of employees to electioneering requires an expedition into the thought processes of the electorate, a journey that administrators and courts are ill-equipped to make. To eliminate this invitation to speculate, the Board should not attempt to plumb the subconscious. Rather, the assay should seek to find whether the questioned action by an election candidate had a tendency to influence the outcome of the voting. If the challenged action had a tendency to influence the outcome of the election, then the election should be invalidated. *NLRB v. Bristol Spring Manufacturing Co.*, 579 F.2d 704 (2nd Cir. 1978); *Plastic Masters, Inc. v. NLRB*, 512 F.2d 449, 450–51 (6th Cir. 1975); *Collins & Aikman Corporation v. NLRB*, 383 F.2d 722, 726 (4th Cir. 1967); *see NLRB v. Savair Manufacturing Co.*, 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973).

■ The tendency-to-influence test requires an examination of the challenged action in light of all the relevant facts, including whether the size of the benefit conferred bears a proper relationship to the actor's stated purpose in conferring it, the number of employees receiving the benefit, the views of the employees concerning the purposes of the payments, and the timing of the payments. *See NLRB v. Commercial Letter, Inc.*, 455 F.2d 109, 111–12 (8th Cir. 1972). Moreover, when, as is the case here, a change of only a few votes would affect the outcome of the election, less egregious actions may require a rerun of the election than a case in which a clear-cut choice has emerged from the balloting. *United Steelworkers of America v. NLRB*, 496 F.2d 1342, 1347 n.11 (5th Cir. 1974).

■ Since the NLRB did not apply the appropriate standard in assessing the validi-

ty of the election, we refuse enforcement and remand the case for further consideration under the proper test set out in this opinion.[1]

ENFORCEMENT DENIED.

CAUSE REMANDED.

---

1. We note that a hearing will not be necessary on remand. The facts here are undisputed, and the application of the tendency-to-influence test to these facts presents strictly a question of law. *See NLRB v. Handy Hardware Wholesale, Inc.,* 542 F.2d 935, 937 (5th Cir. 1976), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2675, 53 L.Ed.2d 271 (1977).