NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

GULF STATES CANNERS,
INC., Respondent.

No. 79-3936
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

Jan. 12, 1981.

Rehearing and Rehearing En Banc
Denied March 4, 1981.

Elliott Moore, Deputy Associate Gen. Counsel, NLRB, Washington, D. C., for petitioner.

Jolly, Miller & Milam, Paul O. Miller, III, James R. Lockard, Jackson, Miss., for respondent.

Before AINSWORTH, GARZA and SAM D. JOHNSON, Circuit Judges.

PER CURIAM:

We consider an application for enforcement of an order of the National Labor Relations Board which requires the respondent, Gulf States Canners, Inc., to bargain collectively with Local 891 of the International Brotherhood of Teamsters, the victor in a representation election held among production, maintenance and quality-control employees working for respondent at its facility in Clinton, Mississippi. Gulf States has refused to bargain as means of challenging the results of the election, which it argues was unfairly influenced through the purchase of gasoline for employees by union representatives.

This is the second application for enforcement in this matter; we denied enforcement of the first after holding that the board had incorrectly based its decision on a consideration of whether the union, in purchasing the gasoline, had intended to influence the outcome of the election. The cause was remanded so that the board could apply a legal standard based upon effect rather than intent: ". . . the assay should seek to find whether the questioned action by an election candidate had a tendency to influence the outcome of the voting." *N. L. R. B. v. Gulf States Canners, Inc.*, 585 F.2d 757, 759 (5 Cir. 1978). It was further noted:

The tendency-to-influence test requires an examination of the challenged action in the light of all the relevant facts, including whether the size of the benefit

bears a proper relationship to the actor's stated purpose in conferring it, the number of employees receiving the benefit, the views of the employees concerning the purposes of the payments, and the timing of the payments. *Id.* The court stated that, as "the facts here are undisputed, and the application of the tendency to influence test presents strictly a question of law," no hearing would be necessary on remand.

The board has, on remand, complied with our instructions. Applying the tendency-to-influence test to the facts previously ascertained,[1] it concluded in a supplemental order that "the union's action in purchasing the gasoline for two eligible voters during its organizational campaign was not objectionable conduct and does not require setting aside the election herein."

█ In this election objection case, it is our duty to determine whether the board has acted within the "wide degree of discretion" entrusted to it by Congress in representation matters. *See N. L. R. B. v. A. J. Tower Co.*, 329 U.S. 324, 330, 67 S.Ct. 324, 327, 91 L.Ed. 322 (1946). This court has noted that a decision by the board "warrants special respect," and that review is limited to "a determination of the reasonableness of the board's finding." *Contract Knitter, Inc. v. N. L. R. B.*, 545 F.2d 967 (5 Cir. 1977). The employer bears a heavy burden of rebutting the presumption that "ballots cast under the safeguards provided by board procedures reflect the desires of the participating employees."

█ We cannot hold that the board abused its discretion in finding that the conduct alleged did not have such a tendency to influence the election that a new election is required. A simple showing of misconduct alone is not sufficient to mandate that result; the employer must also show that the acts "interfered with the employees' exercise of free choice to such an extent that they materially affected the results of an election." *N. L. R. B. v. Gulf States Canners, Inc.*, 585 F.2d at 759. *See also N. L. R. B. v. Sumter Plywood Corporation*, 535 F.2d 917, 920 (5 Cir. 1976); *N. L. R. B. v. Golden Age Beverage Co.*, 415 F.2d 26, 30 (5 Cir. 1969). The board was justified in holding that such an effect was not shown here.

ENFORCED.

---

1. The relevant facts are summarized in the board's supplemental order of June 20, 1979, for which enforcement is sought:

> At the first union meeting, more than 1 month prior to the election, the union announced its offer to provide gasoline to employees who transported other workers to the union meetings and/or who campaigned on behalf of the union at their fellow employees' homes. After this meeting, one employee, designated as witness D in the regional director's report, requested gasoline from a union representative. According to witness D's account of this conversation, he asked, "Didn't you say you were buying gas?" to which the union representative replied, "No, I am not buying gas. I said if you knew of anyone who wanted to come to the meeting but didn't have a ride I would furnish the gas to get that person. Oh, do you want some gas?" Witness D at that point answered, "Yes," and the union representative said "Okay." The union representative then purchased approximately 12 dollars worth of gasoline for witness D. A week later, after the second union meeting, witness D approached the union representative and, as set forth in his affidavit, stated, "I need some gas," to which the union representative replied, "Okay, follow me." (At that time, the union representative again purchased approximately the same amount of gasoline for witness D). On this occasion, another employee, witness C, who had followed witness D and the union representative to the gas station, received approximately 7 dollars worth of fuel.