The STANDARD REGISTER COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 79–1368.

United States Court of Appeals, Sixth Circuit.

May 14, 1981.

William F. Ford and Paul D. Jones, Ford, Harrison, Sullivan, Lowry & Sykes, Atlanta, Ga., Nicholas C. Hollenkamp, Turner, Granzow & Hollenkamp, Dayton, Ohio, for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, Steven Fetter, N. L. R. B., Washington, D. C., for respondent.

Before KEITH, BROWN and KENNEDY, Circuit Judges.

## ORDER

This case is before the court upon a petition by Standard Register Company to review the NLRB's order against the company. The Board's order is reported at 243 NLRB 32, and the supplemental order is reported at 246 NLRB 54. The issue presented by the company is whether the Board properly overruled the company's election objections and, therefore, properly found that the company's refusal to bargain violated Section 8(a)(5) and (1) of the National Labor Relations Act.

The Standard Register Company is engaged in printing business forms at plants in Dayton, Ohio, and other locations in the United States. The company's Dayton employees had traditionally been represented by the Graphic Arts International Union, Local 508, O–K–I, AFL–CIC–CLC (GAIU). Employees at other company plants had been represented by the Dayton Printing and Graphic Communications Union Local 54, AFL–CIO (Pressmen).

On December 27, 1976, the Pressmen filed a petition with the Board seeking to represent the company's employees at the Dayton plant. The GAIU intervened in the election proceeding. On March 2, 1977, the parties executed a Stipulation for Certification upon Consent Election agreement providing for an election on March 11, 1977. Pursuant to the Stipulation, the ballot choices were: GAIU, Pressmen, and neither. The election was conducted as scheduled, and the results were: 57 votes for the GAIU, 52 votes for the Pressmen, and 40 votes for neither organization. Pursuant to the Board's rules and regulations, a runoff election between the union and GAIU was necessary, since none of the three choices on the ballot received a majority of the votes cast.

On March 17, the company filed timely objections to conduct which allegedly affected the results of the election. The company alleged that the GAIU improperly affected the outcome of the election by engaging in "impermissible promises and inducements, material misrepresentations of fact, and threats at a time when the compa-

ny was effectively precluded from responding to them." GAIU had sent a handbill out less than 24 hours before the election which misrepresented the salaries of GAIU-represented employees as compared to those of Pressmen, and which also allegedly included threats of non-representation by the GAIU if it were defeated.

Following an administrative investigation, the Board's regional director issued his Report on Objections on May 17, finding that the objections "raised no substantial or material issue affecting the result of the election," and recommending that the Board overrule the objections and direct a runoff election between the GAIU and the Pressmen. On June 2, the company filed timely exceptions to the director's report.

The runoff election was conducted on July 14. The results were: 73 votes for the Pressmen, 37 votes for the GAIU, and 10 challenged ballots, an insufficient number to affect the results of the election. On August 14, the company again filed timely objections to the runoff election based on the Board's refusal to set aside the initial election. Following an Administrative Investigation, the regional director issued his report on September 19, recommending that the company's objections be overruled. Following the company's filing of exceptions, the Board issued a Supplemental Decision and Certification Order on December 27, affirming the regional director's report and certifying the Pressmen as the collective bargaining representative of the company's employees.

On January 3, 1979, the Pressmen wrote to the company noting its certification as bargaining agent by the Board, and requesting the company to "enter into negotiations toward a new collective bargaining agreement at the earliest possible date." On January 24, 1979, the company replied, refusing to meet or to recognize the Pressmen because of the election irregularities. Since January 24, 1979, the company has refused to bargain with the Pressmen. On July 3, 1979, the Board granted the General Counsel's motion for summary judgment.

Upon consideration of the entire record together with the briefs and oral arguments of counsel, the court concludes that the misrepresentation by the union in this case did not meet the four criteria set forth by the Board in *Hollywood Ceramics, Co., Inc.*, 140 NLRB 221 (1962). That case held that the test for determining whether a misrepresentation is so egregious that an election must be voided is:

... an election shall be set aside only where there has been a misrepresentation or other similar campaign trickery, which involves a substantial departure from the truth, at a time which prevents the other party or parties from making an effective reply, so that the misrepresentation, whether deliberate or not, may reasonably be expected to have a significant impact on the election. 140 NLRB at 224.

In applying the *Hollywood Ceramics* standard, the Fifth Circuit formulated that test as:

... (1) whether there has been a misrepresentation of a material fact; (2) whether the misrepresentation came from a party who was in an authoritative position to know the truth or who had special knowledge of the facts; (3) whether the other party in the election had an adequate opportunity to reply and to correct the misrepresentation.... Recently, this court added a fourth element to the test: whether the employees had independent knowledge of the misrepresented fact, so that they could effectively evaluate the propaganda. *NLRB v. Southern Foods, Inc.*, 434 F.2d 717, 720 (5th Cir. 1970).

Although the handbill's reference to $1.00 and $1.50 differentials overstated the amount the salary differences between the plants, it did convey the essentially correct message that the GAIU had won higher wages for its members than the Pressmen. In fact, in one category, employees earned $1.51 more at the GAIU plant. Therefore, we conclude that the Board did not abuse its discretion when it determined that the misrepresentation was not material under the *Hollywood Ceramics* test.

The company contends that *Diamond Electronics Division of Arvin Systems, Inc., v. National Labor Relations Board*, 570 F.2d 156 (6th Cir. 1977), mandates a reversal of the Board's decision. We disagree. *Diamond* is distinguishable from the present case on its facts. There was no truth in the union's contention in *Diamond* that it had won a 40% increase in a single negotiation. Here, however, it is true that some GAIU members make $1.50 more than the Pressmen members. Most importantly, *Diamond* is distinguishable in that the union that misrepresented the increase there also won the election. Therefore, it was more difficult for the *Diamond* court to conclude that the Board had not abused its discretion when it concluded that the misrepresentation did not affect the election result. Here, the GAIU did not win the election and the Pressmen, the current collective bargaining agent, did nothing to adversely affect the "laboratory conditions" of the election process.

Accordingly, we deny the company's petition for review and enforce the Board's order in full.

CORNELIA G. KENNEDY, Circuit Judge, dissenting.

I respectfully dissent. At the time of the election the GAIU was representing the employees in arbitration proceedings seeking back wages claimed to be owing. The GAIU handbill contained the following statement:

As the company stated in their presentation to the employees, the GAIU has a case pending in Court regarding the "lost" $.45 wage increase. It would be to the Company's advantage if the GAIU was defeated in the election and would ultimately decide not to spend the remaining members' dues in an effort to collect the lost wage increase for its former members. This would relieve the Company of an approximately $4,000 pending liability per each affected member.

I agree with the dissenting member of the Board that this statement was "an impermissible threat . . . to abandon the bargaining representative's statutory duty to represent the unit membership after the election." The majority of the Board, concentrating on the GAIU's intention, held that the intent of the language was to negate implications in an earlier letter of the employer. It found that

[n]owhere does the Intervenor [GAIU] indicate an intention to abandon its efforts to collect the disputed wages. . . . [i]n our view, the Intervenor was merely describing what the Employer would wish to have happen should the Intervenor [GAIU] lose the election.

The problem with the Board's holding is that is not what the leaflet says. It does not say that this is what the employer wants the GAIU to do. Rather it threatens that this is what the GAIU will do if not re-elected. We must read the language as it would be likely to be understood by the ordinary reader. It is what was said that is important, not what was intended to be said. Certainly the statement here was "reasonably susceptible of coercive implications." *G. H. Hess*, 82 N.L.R.B. 462 (1979). Our Court stated in *Plastic Masters, Inc. v. N. L. R. B.*, 512 F.2d 449, 450 (6th Cir. 1975):

. . . in our opinion the intent or absence of intent on the part of the Union to influence the employees' votes by the overpayments is not a controlling factor. Whether the conduct of the Union was intended to influence the vote, these actions "undoubtedly had a tendency to influence the election results." *Collins & Aikman Corp. v. N. L. R. B.*, 383 F.2d 722, 729 (4th Cir. 1967).

In a decision in which it relied on our Court's holding in *Plastic Masters*, the Fifth Circuit explained:

The intent test is inconsistent with the logic behind these holdings [setting aside representation elections]. The effects of an act intended to influence an election may be so minimal that the outcome remains unaffected. Conversely an unintentional act may have such a deleterious effect on the conduct of an election that the result does not reflect the voters' free will. In determining whether an election should be invalidated, the focus should be on the effects of a particular act on the

electorate rather than on the actor's intent.

*N. L. R. B. v. Gulf States Canners, Inc.*, 585 F.2d 757, 759 (5th Cir. 1978).

The threat here could not but have a tendency to influence the outcome of the voting. Employees who might have wished to vote for "no union," as well as those who might have wished to vote for the Pressmen, may have voted for the GAIU so as not to lose their claims to the back wages. The panel fails to discuss the effect on the election of the Union's threat.

In addition, the majority of the Court suggests that the overstatements of the wage differential between Pressmen and GAIU plants were not misleading under *Diamond Electronics Division of Arvin Systems, Inc. v. N. L. R. B.*, 570 F.2d 156 (6th Cir. 1977). The Board never analyzed the misleading nature of these statements. It simply asserted that the statements did not require setting the election aside. In *Diamond* the union overstated by 40 percent the wage increase it won in a bargaining session. Our Court ruled that "[t]his was a material misrepresentation with respect to wage rates, a matter of great concern to employees." *Id.* at 157. In this case the GAIU overstated the average wage differential between the GAIU represented Dayton plant and the Pressmen represented York and Fayetteville plants by 78 percent and 88 percent, respectively. This is more misleading than the statements at issue in *Diamond.*

The panel suggests the overstatements were not misleading because they conveyed the "essentially correct message that the GAIU had won higher wages for its members than the Pressmen." By the same token, the overstatement at issue in *Diamond* conveyed the "essentially correct" message that the union had won a wage increase for its members. *Diamond* forecloses the conclusion that such an "essentially correct" message is not materially misleading. I also disagree that this case is distinguishable from *Diamond* merely because the otherwise misleading statements were accurate with respect to one out of thirty-five job categories.

The majority further states that *Diamond* is distinguishable in that the union making the misstatement in *Diamond* won the election while the GAIU which made the wage overstatement here was the loser in the runoff election. The majority's position appears to be based on the assumption that the GAIU's misleading statements could only have hurt the Pressmen; that they could not have influenced the employees to vote union in preference to "no union." I disagree. The employees might well have believed that a company which paid its workers in different cities substantially different wages for comparable work is unfair, and that the protection of a union is necessary for employees of that company.

The GAIU received 20 votes less in the runoff election than it received in the first election. Had half of those 20 votes been given to the employer, the parties in the runoff election would have been the employer and the Pressmen. We can only speculate as to what the outcome of an election not influenced by material misrepresentations would have been. The Board should have required a new election. I would deny enforcement of the Board's order.