NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

KLINGLER ELECTRIC CORPORATION, Klingler Electronics Division and Klingler Manufacturing Division, Respondents.

No. 79–3887.

United States Court of Appeals, Fifth Circuit. Unit A

July 7, 1981.

Elliott Moore, Deputy Associate Gen. Counsel, Richard Zuckerman, N.L.R.B, Washington, D.C., for petitioner.

Louis A. Fuselier, Dalton McBee, Jr., Jackson, Miss., for respondents.

Before SKELTON *, Senior Judge, and RUBIN and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

The National Labor Relations Board ("NLRB" or "the Board") has applied for enforcement of an order issued against Klingler Electric Corporation ("Klingler") for unfair labor practices in refusing to negotiate with the union certified by the Board to represent Klingler's employees. In response, Klingler alleges that the Board's certification of the union was improper because of certain irregularities in the original election of the union. We grant the Board's request for enforcement.

## I. The Background Facts

Klingler operates a plant in Jackson, Mississippi, to produce electronic wiring boards. The production and maintenance employees at this plant were not represented by a union prior to May 1978, when the International Union of Electrical, Radio and Machine Workers, AFL–CIO–CLC ("the Union") filed a representation petition with the NLRB, seeking an election for a bargaining unit made up of these employees.

At the formal representation hearing held on June 15, 1978, Klingler argued that eight "leadperson" employees are actually supervisory staff and, therefore, should be excluded from the bargaining unit because they are not "employees" protected by §§ 8(a)(1) and (3) of the National Labor Relations Act ("the Act"). 29 U.S.C.

* Senior Judge of the United States Court of Claims, sitting by designation.

§ 158(a)(1) & (3). Each department of Klingler's plant has one leadperson who exercises a loose and somewhat informal supervision over the ten to twenty employees within the department. The duties of each leadperson vary greatly between the departments and personalities involved, but a leadperson typically receives instructions and design specifications from a Klingler plant supervisor and then assigns employees within his or her department to implement those instructions. At all other times a leadperson usually fills a manufacturing position identical to the other employees within his or her department.

The NLRB's acting regional director issued a decision and direction of election on June 30, 1978, finding that the eight leadpersons were not supervisory employees as defined by § 2(11) of the Act, 29 U.S.C. § 152(11), and scheduling the union election for July 28, 1978. Klingler filed a request with the Board for review of the acting regional director's decision. On the day before the election, the NLRB notified Klingler by telegram that "a substantial issue is raised concerning the supervisory status of the eight leadmen." Rather than delay the election, however, the Board chose to allow the leadpersons to vote under challenge, which would allow Klingler to exclude the votes if it subsequently prevailed on this issue. The election was held on schedule and resulted in 32 votes in favor of the Union, 15 against, and 9 challenged ballots.

Shortly after the election, Klingler filed timely objections with the Board, claiming that several factors and incidents had destroyed the validity of the election.[1] The acting regional director conducted an administrative investigation of these objections pursuant to the Board's own rules and regulations. No formal hearing was held, but both parties were given full opportunity to submit evidence. Klingler offered several employees to give affidavits, including two plant supervisors and some of the disputed leadpersons. The acting regional director allowed counsel for Klingler to at-tend the taking of the affidavits from the plant supervisors, but not from the other employees. The acting regional director then took several other affidavits either at the request of the Union or on his own initiative.

On September 26, 1978, the acting regional director issued a supplemental decision and certification of the Union, overruling all of Klingler's objections to the election. It bears emphasis that this administrative investigation of Klingler's post-election objections and challenges sought only to determine whether Klingler had raised factual issues that justified a hearing on those challenges. Klingler had the burden of raising specific factual issues that, if proven, could invalidate the election, but all credibility questions were to be resolved in favor of Klingler in deciding whether a hearing was called for. *NLRB v. Singleton Packing Corp.*, 418 F.2d 275, 280 (5th Cir. 1969), *cert. denied*, 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970). The acting regional director concluded that it was not. Klingler asked the NLRB to review this supplemental decision, and the Board granted that request in relation to the supervisory status of the leadpersons and their conduct during the election. The Board instructed the acting regional director to investigate all aspects of this objection, accept new evidence from the parties, and issue a second supplemental decision setting forth the new evidence and transferring the case back to the Board for decision.

The acting regional director conducted this second investigation on January 3 and 4, 1979, taking additional affidavits on the same terms as the earlier investigation. On January 25, 1979, he issued a second supplemental decision based on this investigation. The decision reviewed the relevant evidence, concluded that the leadpersons were not supervisory employees, and recommended that Klingler's objections be entirely overruled. The Board reviewed the record forwarded by the acting regional director and issued its own decision on May

---

1. See section III. below.

31, 1979. The decision adopted the findings and recommendations of the acting regional director and certified the Union as the exclusive representative of Klingler employees in the unit.

In order to force a review of the Board's decision by this court, Klingler still refused to negotiate with the Union. Accordingly, the Union filed an unfair labor practices charge with the NLRB and the general counsel of the NLRB moved for summary judgment. Klingler responded to the motions by admitting the refusal to bargain and asserting as an affirmative defense its earlier objections to the election.[2] The Board found that all of these issues had been litigated in the previous representation proceedings and, therefore, ordered Klingler to bargain with the Union. It is our responsibility to decide whether to grant enforcement to the Board's order under § 10(e) of the Act. 29 U.S.C. § 160(e).[3]

## II. *The Record Before the Board and Upon Judicial Review*

During the course of his administrative investigation, the acting regional director took certain affidavits from Klingler employees and then quoted from and relied upon portions of these affidavits in his decision and recommendations. But, pursuant to the Board's interpretation of one of its own regulations, he did not include these affidavits in the record that he transmitted to the Board. The Board thus adopted findings and recommendations without access to the complete documents upon which those findings and recommendations were, to some extent, predicated. Nor did Klingler have access to several of these affidavits[4] in framing its briefs to the Board and to this court, even though the acting region-

al director used them as part of the evidentiary basis for his decision. Klingler secured an order from this court that the affidavits be forwarded to us under seal, subject to the Board's legal claim that they should not be considered part of the record in this proceeding. Therefore, we must first address the procedural question whether these affidavits should be considered part of the record.

The Board attempts to justify the exclusion of the affidavits by arguing that post-election objection procedures are purely a creation of their own regulations, because the Act makes no provision for such a proceeding. Consequently, the Board has established a regulation defining the contents of the record in post-election objection and challenge proceedings. 29 C.F.R. § 102.-69(g). The pertinent sections of that regulation provide as follows:

The notice of hearing, motions, rulings, orders, stenographic report of the hearing, stipulations, exceptions, documentary evidence, together with the objections to the conduct of the election or conduct affecting the results of the election, . . . any briefs or other legal memoranda submitted by the parties, the decision of the regional director, if any, and the record previously made [in the pre-election unit determination proceedings] shall constitute the record in the case. Materials other than those set out above shall not be part of the record; except that in a proceeding in which no hearing is held, a party filing exceptions to a regional director's report on objections or challenges, a request for review of a regional director's decision on objections or challenges, or any opposition thereto, may

---

2. Representation proceedings are not subject to direct review by this court, and Klingler was following the appropriate procedure. *See NLRB v. Osborn Transportation, Inc.*, 589 F.2d 1275, 1278 n.4 (5th Cir. 1979), and cases cited therein.

3. The statute reads, in pertinent part, as follows:

The Board shall have power to petition any court of appeals of the United States, . . . within any circuit . . . wherein the unfair

labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order and for appropriate temporary relief or restraining order, and shall file in the court the record in the proceedings, as provided in section 2112 of Title 28.

29 U.S.C. § 160(e).

4. Some of Klingler's employees voluntarily submitted copies of their affidavits to their employer.

append to its submission to the Board copies of documents it has timely submitted to the regional director and which were not included in the report or decision.

The Board interprets this regulation to be in two distinct sections: the first sentence specifying the contents of the record in a case with a formal hearing and the second sentence doing the same for all cases without hearings. Thus the Board argues that any affidavits that Klingler wanted to be seen by the Board should have been appended to its briefs to the Board and that, otherwise, they are not part of the record. We note in passing that that is not an adequate answer to the problem before us. The acting regional director relied upon some affidavits that Klingler has never seen, even from witnesses brought forward by Klingler. The only way that the relevant portions of these affidavits could get into the record is for the regional director to place them there, but the Board argues that § 102.69(g) prohibits him from doing so.

Previous versions of this regulation and the closely-related § 102.68 specified that "any briefs or *other documents* submitted by the parties" to the regional director should be part of the record (emphasis added). Based on that earlier language, this court once held that employee affidavits submitted by the parties must be sent to the Board as "other documents" within the meaning of § 102.68. *Southwestern Portland Cement Co. v. NLRB*, 407 F.2d 131, 134–35 (5th Cir.), *cert. denied*, 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71 (1969).[5] But the NLRB subsequently amended both regulations to read "any briefs or *other legal memoranda* ..." (emphasis added). 29 C.F.R. §§ 102.68 & 102.69(g) (1977). Since those amendments effectively overruled *Portland Cement*, this court has on at least three occasions declined to decide whether employee affidavits submitted by the par-

ties were "documentary evidence" required by § 102.69(g) to be included in the record. *Birmingham Ornamental Iron Co. v. NLRB*, 615 F.2d 661, 665–67 (5th Cir. 1980) (declining to reach the question because the employer's factual allegations were insufficiently specific to require a hearing in any event); *NLRB v. Dobbs House, Inc.*, 613 F.2d 1254, 1260–61 (5th Cir. 1980) (declining to reach the question because the employer had full access to all of the affidavits excluded from the record, and any error was therefore harmless); *NLRB v. Osborn Transportation, Inc.*, 589 F.2d 1275, 1281–82 (5th Cir. 1979) (declining to reach the question for the same reason offered in *Dobbs House*, 613 F.2d at 1260–61). In the case now before us, Klingler has made specific factual allegations and has never had access to 15 affidavits taken by the acting regional director, at least four of which were specifically cited in his decision. We will therefore decide the issue that we have reserved on these previous occasions.

■ It is well established that a regional director may, in the course of an administrative investigation, take confidential employee affidavits and withhold them from the parties. *See NLRB v. Robbins Tire*, 437 U.S. 214, 236–43, 98 S.Ct. 2311, 2324–27, 57 L.Ed.2d 159 (1978); *NLRB v. Golden Age Beverage Co.*, 415 F.2d 26, 34–35 (5th Cir. 1969). If the acting regional director does nothing more than accumulate these affidavits for his own investigatory files, we would have no objection to his maintaining their confidentiality. In a post-election objection and challenge proceeding such as this, the objecting party has the burden of raising specific objections, backed by specific offers of proof, indicating that unlawful acts invalidated the election. Thus the acting regional director could have made a decision and recommendation based *solely* upon evidence known to and offered by Klingler. If that had been the case, it

---

5. *Portland Cement* cited § 102.68 as the relevant regulation. That appears to have been in error, because § 102.68 specifies the contents of the record in preelection unit determination hearings. The proceeding at issue in *Portland* *Cement* and in this case is a *post-election* objection and challenge decided without a hearing, which is governed by § 102.69(g). The two sections are quite similar, however.

would have been entirely appropriate for him to retain the affidavits he did not use within his investigatory files and decline to reveal them to Klingler or incorporate them in the record forwarded to the Board and to this court.

But that was not the case here: the acting regional director selected portions of the employee affidavits and cited them as the primary and almost exclusive evidentiary basis of his decisions, without revealing any of them to Klingler or incorporating any of them in the record. Certain of these affidavits were from witnesses offered by Klingler, and certain others were taken at the initiative of the acting regional director or at the request of the Union. A few of Klingler's own witnesses voluntarily gave Klingler copies of their affidavits, but Klingler has never seen at least four affidavits specifically cited by the acting regional director. Furthermore, the Board itself has never had access to eight other affidavits of Klingler employees cited by the regional director's decision, nor would we have such access in reviewing the Board's decision, were we to accept the Board's contentions.[6]

It bears emphasis that these affidavits make up almost the entire body of evidence that underlies the regional director's decisions. The only other substantive evidence

is the transcript of the pre-election unit determination hearing held on June 15, 1978. This hearing was concerned with the supervisory status of the leadpersons and, of course, had nothing to do with the subsequent election conduct that served as the basis for all ten of Klingler's substantive challenges to the election. The Board's interpretation of § 102.69(g) would thus ask us to review an agency action on the basis of a "record" that is devoid of *any* evidence on the most material issues.

 The Board seeks to justify the confidentiality of all of these affidavits by arguing that employees will not be candid during the administrative investigation if their affidavits might be revealed to the employer or the union by being incorporated in the record. But if the affidavits are used as an evidentiary basis for the regional director's decision, the contents so used are no longer confidential anyway: they appear in the decision itself. The regional director could, before incorporating the affidavits in the record, simply screen out the affiant's name and other portions of the affidavit that bear no relevance to the testimony used in his decision. The Board's own regulations require a similar procedure if the affiant is called as a witness at a subsequent hearing. 29 C.F.R. § 102.118(b)(1) & (2).[7] We thus

6. Admittedly, these eight affidavits would have been included in the record if Klingler had attached them to its submission to the Board under the exception contained in § 102.69(g). That possibility does not relieve the Board of its responsibility to consider the evidence used by the regional director, or this court of its responsibility to consider all the evidence that underlies an agency action.

7. The regulation reads as follows:

(1) Notwithstanding the prohibitions of paragraph (a) of this section, [prohibiting release of investigatory documents] after a witness called by the general counsel or by the charging party has testified in a hearing upon a complaint under section 10(c) of the act, the trial examiner shall, upon motion of the respondent, order the production of any statement (as hereinafter defined) of such witness in the possession of the general counsel which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the administrative law judge shall order

it to be delivered directly to the respondent for his examination and use for the purpose of cross-examination.

(2) If the general counsel claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the administrative law judge shall order the general counsel to deliver such statement for the inspection of the administrative law judge in camera. Upon such delivery the administrative law judge shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness except that he may, in his discretion, decline to excise portions which, although not relating to the subject matter of the testimony of the witness, do relate to other matters raised by the pleadings. With such material excised the administrative law judge shall then direct delivery of such statement to the respondent for his use on cross-examination. If, pursuant to such procedure, any portion of such statement is withheld from the respondent and

have difficulty identifying any substantial interest in the "confidentiality" of statements that are actually used in the regional director's decision and recommendations.

■ The only evidence that is actually needed for the regional director's decision is that which is known to and offered by the party seeking to overturn the election. In this challenge procedure, the objecting party bears the entire burden of adducing prima facie proof of facts sufficient to invalidate the election. *Singleton Packing*, 418 F.2d at 280. Thus the regional director could reach a decision based only on evidence offered by the objecting party. If there is any credibility issue on a point sufficient to invalidate the election, a hearing is required. *NLRB v. Claxton Manufacturing Co., Inc.*, 613 F.2d 1364, 1366–67 (5th Cir. 1980). The regional director may, therefore reach a decision without endangering any of his own confidential investigations because they are, quite simply, not essential for the limited decision before him.

Having thus disposed of any argument based on a policy of administrative confidentiality, we will examine the Board's own regulation to see what it requires. In its briefs and oral argument, the Board argues that the first sentence of § 102.69(g) is intended to refer only to cases involving a formal hearing, because it lists many items that exist only in relation to a hearing. Consequently, the record in an administrative investigation without a hearing, such as this case, would be defined only in the second sentence.

The Board's argument is groundless because the second sentence simply does not specify what the contents of the record should be in a non-hearing case. It only creates an *exceptional* means by which a party may place before the Board documents submitted to the regional director but excluded from the record by him. The irrationality of the Board's argument is shown by its own failure to follow that interpretation: the transcript of the pre-election unit determination proceeding was forwarded to us as part of the record, even though this is a non-hearing case and such a transcript is designated as part of the record only in the first sentence of the regulation.

■ We interpret the first sentence of § 102.69(g) to define the record in all proceedings, whether or not a hearing is required. It is immaterial that the sentence includes some items that will not apply to a non-hearing case. That is also true under the Board's interpretation: for instance, there may not be any "stipulations" or "exceptions" even in a case with a hearing. We also hold that any reasonable interpretation of "documentary evidence" includes all portions of affidavits or other documents that are relevant to the evidentiary basis of the regional director's decision and recommendation.[8] The Sixth Circuit has given this same interpretation to the regulation.

the respondent objects to such withholdings, the entire text of such statement shall be preserved by the general counsel, and, in the event the respondent files exceptions with the Board based upon such withholding, shall be made available to the Board for the purpose of determining the correctness of the ruling of the administrative law judge.

Each affiant is advised of this limitation upon the confidentiality of his affidavit before giving his statement. NLRB Case Handling Manual Part I, Sec. 10058.4.

This regulation causes us some doubts as to how effective assurances of confidentiality can be in encouraging candid employee affidavits. Although the vast majority of proceedings before the Board are resolved without a hearing, *see Robbins Tire & Rubber Co.*, 437 U.S. at 241 n.20, 98 S.Ct. at 2326 n.20, 57 L.Ed.2d 159, we

credit witnesses with the intelligence to realize that the more damaging their testimony against the employer, the more likely that a hearing will take place and that they will be called as a witness. Thus the greater the need for confidentiality in the taking of employee affidavits, the less likely the chance that the confidentiality will be observed under the Board's own regulations. The Board's interest in confidentiality seems even more tenuous in light of these regulations.

8. We are aware that allowing the regional director to screen out portions of the affidavits that he considers irrelevant to his findings and recommendations confers virtually unrestrained discretion upon him. This discretion is considerably greater than that allowed by the Board's own regulations in a similar situation. See note 7 above. The Board may choose to

*NLRB v. North Electric Co.*, 644 F.2d 580 (6th Cir. 1981).[9] We also agree with the Sixth Circuit that to exclude such documents from the record would raise serious due process problems. *Id.* at 583. *See also NLRB v. Curtis Noll Corp.*, 634 F.2d 1027 (6th Cir. 1980); *NLRB v. Cambridge Wire Cloth Co.*, 622 F.2d 1195, 1197–99 (4th Cir. 1980); *Prestolite Wire Div. v. NLRB*, 592 F.2d 302, 304–06 (6th Cir. 1979). We need not pursue that constitutional question at this time, however, because we interpret the Board's regulation in a way that does not offend the requirements of due process.

Furthermore, regardless of the Board's own procedures, 28 U.S.C. § 2112(b) requires that affidavits used as the evidentiary basis of decisions of the regional director and the Board must be part of the record available to this court in its review of those decisions.[10] Of course, this statute does not impose requirements upon the *internal* procedures of the Board, but administrative efficiency is certainly served if the Board has before it the same record that we will require for appellate review of the Board's decision.

If these affidavits were not available to us, or if they offered the slightest basis for a different action by the Board, we would, of course, be required to remand this case

---

establish some similar guidelines for regional directors in this kind of proceeding, but we will not assume that regional directors will abuse their discretion to screen out irrelevant sections of such affidavits. We will address that problem only if it arises.

9. We note that *Reichart Furniture Co. v. NLRB*, 649 F.2d 397 (6th Cir. 1981), a recent decision of another panel of the Sixth Circuit, indicates some retreat from the broader language of *North Electric* and *Prestolite Wire Div. v. NLRB*, 592 F.2d 302, 304–06 (6th Cir. 1979). The concurring opinion in *Reichart Furniture* makes explicit something that the majority opinion only implies: that this panel limits the interpretation of § 102.69(g) established in *North Electric Company* (requiring the regional director to include in the record all affidavits used in his decision) to those cases in which the employer has made allegations justifying a hearing.

We decline to so limit our interpretation of the Board's regulation. Both our holding and the Sixth Circuit's opinion in *North Electric Company* are based upon an interpretation of the specific language contained in § 102.69(g). But the panel opinion in *Reichart Furniture* makes no attempt to derive its limitations from the same regulation, nor can we imagine any basis for doing so. In fact the *Reichart Furniture* opinion makes no attempt to justify its limitation at all. We believe that the need of a party or a court to see the documentary evidence that has been used as the basis of an agency action is at least as great when the regional director decides that a hearing is not justified.

10. The pertinent part of the statute reads as follows:

The record to be filed in the court of appeals in such a proceeding [to review or enforce orders of administrative agencies] shall consist of the order sought to be reviewed or enforced, the findings or report upon which it is based, and the pleadings, evidence, and proceedings before the agency, board, commission, or officer concerned, or such portions thereof (1) as the rules prescribed under the authority of section 2072 of this title may require to be included therein, or (2) as the agency, board, commission, or officer concerned, the petitioner for review or respondent in enforcement, as the case may be, and any intervenor in the court proceeding by written stipulation filed with the agency, board, commission, or officer concerned or in the court in any such proceeding may consistently with the rules prescribed under the authority of section 2072 of this title designate to be included therein, or (3) as the court upon motion of a party or, after a prehearing conference, upon its own motion may by order in any such proceeding designate to be included therein. Such a stipulation or order may provide in an appropriate case that no record need be filed in the court of appeals. If, however, the correctness of a finding of fact by the agency, board, commission, or officer is in question all of the evidence before the agency, board, commission, or officer shall be included in the record except such as the agency, board, commission, or officer concerned, the petitioner for review or respondent in enforcement, as the case may be, and any intervenor in the court proceeding by written stipulation filed with the agency, board, commission, or officer concerned or in the court agree to omit as wholly immaterial to the questioned finding. If there is omitted from the record any portion of the proceedings before the agency, board, commission, or officer which the court subsequently determines to be proper for it to consider to enable it to review or enforce the order in question the court may direct that such additional portion of the proceedings be filed as a supplement to the record. 28 U.S.C. § 2112(b).

to the Board for completion of the record and reconsideration of the case. *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 544–45, 98 S.Ct. 1197, 1212, 55 L.Ed.2d 460 (1978). But as we noted above, the affidavits accumulated by the acting regional director were forwarded to this court under seal. Having found that they must be considered part of the record relied upon by the acting regional director, we have examined the affidavits carefully.[11] We find that none of them contain any information that would add weight to Klingler's case or stand the slightest chance of affecting the Board's action. All of the relevant information they contain was fully and accurately stated in the two decisions of the acting regional director. Under these circumstances, it would be an exercise in futility and pointless delay to remand this case for "supplementation" of the record or "reconsideration" by the Board. The affidavits do not *add* relevant information, but merely allow us to *verify* that the acting regional director actually had, and accurately quoted, the evidence that he cited. We may, therefore, proceed to consider the substantive findings that he made and that the Board subsequently adopted.

### III. *The Election Violations Alleged by Klingler and the Standard of Judicial Review*

Our enforcement of the Board's order requiring Klingler to bargain with the Union is dependent upon the validity of the Board's earlier decision certifying the Union after the election of June 30, 1978. *Osborn Transportation*, 589 F.2d at 1278 n.4; *Golden Age Beverage*, 415 F.2d at 28.

Klingler raises three factors as a basis for invalidating the election and, therefore, for denying enforcement to the Board's order:

1) that the leadpersons were supervisory employees whose participation in the election on behalf of the Union tainted the election process;

2) that certain actions of the Board's representative in conducting the election influenced the election results; and

3) that Union payments to employees who had given up a day's work in order to testify on behalf of the Union at the pre-election representation hearing exerted improper influence on employee votes.

■ Our standard of review is based upon the recognition that Congress has entrusted broad discretion to the Board to conduct and supervise employee elections. The specialized functions of the Board, such as classification of employees and the identification of an unacceptable degree of interference with free choice in union elections, require a quality and degree of expertise uniquely within the domain of the Board. If the Board's decision is reasonable and based on substantial evidence in the record considered as a whole, our inquiry is at an end. *Claxton Manufacturing*, 613 F.2d at 1365–66; *Dobbs House*, 613 F.2d at 1256; *Osborn Transportation*, 589 F.2d at 1279–80.

■ In order to gain the right to a new election, Klingler has the entire burden of 1) offering "specific evidence of specific events from or about specific people," and 2) showing that these objectionable activities, "when considered as a whole, either tended to or did influence the outcome of the election." *Claxton Manufacturing*, 613 F.2d at 1366. The latter showing is especially difficult where, as in Klingler's election, the union won by a wide margin. *NLRB v. Sumter Plywood Corp.*, 535 F.2d

---

11. Theoretically, of course, we should look only at the affidavits actually used by the acting regional director. We would have no way of knowing that with certainty, however, and a remand would be necessary. But the distinction between the affidavits he used and those he did not use is meaningless in this case because all of the affidavits are innocuous and are valuable to the record only as confirmation of what the acting regional director has already cited in his decision.

So that Klingler may satisfy itself that the actual affidavits do not enhance its case, we have issued an order that the Board release to Klingler all relevant portions of affidavits used as evidence in this proceeding and not previously made available to Klingler by its employees. We have extended the time for filing of a motion for rehearing so that Klingler may bring to our attention any new information that would justify a different result in this case.

917, 924 (5th Cir. 1976), *cert. denied*, 429 U.S. 1092, 97 S.Ct. 1105, 51 L.Ed.2d 538 (1977).

■ But Klingler must first pass the hurdle of earning a hearing on these issues. If the Board assumes the truth of all the specific allegations raised by Klingler, but still finds these facts inadequate to influence the *outcome* of the election, no hearing is required. *Singleton Packing*, 418 F.2d at 280. Conversely, if the facts alleged are adequate for that purpose, factual questions may not be resolved against the employer without a hearing. *Claxton Manufacturing*, 613 F.2d at 1366–67.

## IV. *Klingler's Objections*

### A. *Participation of Leadpersons*

If Klingler's leadpersons are supervisory staff, they should not have been included in the bargaining unit and, under certain conditions, their advocacy of the union might invalidate the election. The Board's decision held, first, that the leadpersons are not supervisory personnel and, second, that even if they were supervisors, their participation could not have affected the outcome of the election, based on the few allegations of objectionable conduct raised by Klingler. If the Board's second conclusion is adequately supported, we need not deal with the first. We will, therefore, assume that the leadpersons are supervisors for the purposes of this discussion.

■ First, we note that the Union won by a margin of 32 to 15 even when the 9 votes of the leadpersons were excluded. The validity of the election is thus not undermined merely by the votes of the leadpersons, and Klingler bears a heavy task in identifying specific conduct of the leadpersons that would tend to influence enough other votes to affect that outcome. In attempting to meet that burden, Klingler first alleges that the leadpersons were active in the organization and election campaigns. But pro-union activities by supervisors are merely an expression of personal preference and are not enough, by themselves, to invalidate an election. *NLRB v. Alamo Express, Inc.*, 430 F.2d 1032, 1035 (5th Cir. 1970), *cert. denied*, 400 U.S. 1021, 91 S.Ct. 584, 27 L.Ed.2d 633 (1971). Klingler must show that the activities

> created an environment of tension or coercion such as to preclude employees from exercising a free choice. For conduct to warrant setting aside an election, not only must that conduct be coercive, but it must be so related to the election as to have had a probable effect upon the employee's actions at the polls.

*Singleton Packing*, 418 F.2d at 281 (quoting *NLRB v. Zelrich Co.*, 344 F.2d 1011, 1015 (5th Cir. 1965)).

The only evidence that Klingler offered of actual *coercive* conduct by the leadpersons was that two leadpersons made isolated and relatively mild threats of economic reprisals against fellow employees who did not support the union. The first of these statements was merely a misrepresentation that the union would not represent all employees equally in the distribution of benefits after the election, but would favor those who had supported the union.[12] The employee to whom the statement was made asked the union organizer privately about the statement and he publicly corrected the misinformation at an employee meeting immediately thereafter. Klingler offered no indication how this incident could have influenced other employees. The second incident was merely the comment, "she'll be the grease monkey" directed at an anti-union employee by a leadperson standing with several other employees. Nothing further was made of the remark, and it was never even connected directly to the election issue. Clearly, these two incidents standing by themselves are not sufficient to indicate that there was "an atmosphere of tension or

---

12. This leadperson also participated in a second similar incident prior to the filing of the representation petition. We do not consider that incident because the Board has decided, and this court has affirmed, that any misconduct occurring before the filing of the petition should be considered too remote in time to influence the subsequent election. *Golden Age Beverage*, 415 F.2d at 31.

coercion such as to preclude employees from exercising a free choice," *Singleton Packing*, 418 F.2d at 281, and the acting regional director was justified in finding that they would not warrant setting the election aside.[13]

Klingler also claims that the leadpersons signed and solicited union authorization cards, thereby tainting the showing of employee interest that the Board requires prior to directing an election. 29 C.F.R. §§ 101.17 & 101.18. But the second supplemental decision specifically found that the union's showing of interest was sufficient to warrant processing of the petition even if all of the cards signed and solicited by the leadpersons were excluded. Because Klingler does not dispute that finding, the point of error fails.

Klingler does not offer any other evidence that the participation of the leadpersons in the election, even if they are supervisors, tended to influence the outcome of the election. The acting regional director therefore properly overruled the objection.

### B. *Conduct of the Election*

■ Klingler makes several weak allegations that certain aspects of the conduct of the election prejudiced the results. First, Klingler argues that the Board should have stayed the election pending resolution of the leadperson supervisory issue, rather than allow the leadpersons to vote under challenge. Klingler raises no specific facts to support this point of error, other than a vague implication that some leadpersons might have been recruited to campaign on behalf of the company if they had been labeled as supervisors prior to the election. But Klingler does not identify any specific leadperson willing to so campaign or offer any evidence that such an effort could have affected the outcome of the election. This allegation is insufficiently specific to require a hearing. *Birmingham Ornamental Iron*, 615 F.2d at 666–67.

■ The second point of error based on the conduct of the election is that the Board's agent acted so as to allow a bitter but brief confrontation between a pro-union employee and one of Klingler's observers. When one of the leadpersons approached the ballot box, the company's observer noted to the Board's observer that the company wished to challenge her vote. The leadperson reacted by calling the observer "a bitch." When the Board's representative intervened and asked the leadperson's employment position, she replied that she was "just a general flunkie," that all the employees were "just general flunkies." Even if the conduct of the Board agent did precipitate the incident, which we doubt, it was neither explosive nor likely to influence a significant number of votes. One of the participants acknowledged that the issues between the two employees were essentially personal, and the remarks did not have a substantial connection to the election issue. Klingler offered absolutely no evidence of the incident's effect on the election, and the Board was therefore justified in concluding that the allegation was not sufficient to invalidate the election.

■ Klingler also alleged that this confrontation amounted to a violation of the rule established by the Board in *Milchem, Inc.*, 170 NLRB 362 (1968). In *Milchem*, the Board prohibited "prolonged conversations between representatives from any party to the election and voters waiting to cast ballots," because "the final minutes before an employee casts his vote should be his own, as free from interference as possible." 170 NLRB at 362. The acting regional director dispensed with this objection solely on the basis that there was no evidence that the leadperson was acting as an agent or repre-

---

**13.** Klingler also alleged a third incident of a threat of economic reprisal by a rank-and-file employee. That employee threatened a co-worker with the loss of a ride to work if she did not vote for the union. The co-worker reported the remark to her employer and she never heard anything more of the threat. This threat was made to a single employee on a single occasion. Even when all three of these inci-

sentative of the Union.[14] In addition, we note that the comments were not "prolonged," or even a "conversation." The Board clearly had substantial evidence to conclude that the *Milchem* rule had not been violated.

■■■ The third point of error is that the Board's agent departed from the schedule of the election by opening the election 17 minutes late and closing it 15 minutes late. But only two employees out of the 58 eligible employees failed to vote, and Klingler does not offer the slightest indication how this minor departure from the election schedule could have influenced the election. Without such evidence, the Board was justified in overruling Klingler's objection.

### C. Union Payments to Employees

The Union asked certain Klingler employees to appear and testify at the pre-election representation hearing in June 1978. The Union then reimbursed at least three of these employees for a day's wages by presenting checks to them at a general employee meeting with the comment by the union representative that he "had a little something for those people who had been at the hearing." Klingler maintains that these payments were excessive because it also paid the employees for those days. The acting regional director rejected that argument in his first supplemental opinion because Klingler had offered no evidence that it had paid the employees or that the payments were "used to improperly influence" employees. Subsequent to that opinion, Klingler did offer, in its appeal to the Board, payroll records showing that it had paid the employees for the days in question.

Assuming that these versions of the incident are correct, we agree that the coy remark that accompanied the Union's checks indicates something less than the most straightforward intent on the part of the Union representative. The checks certainly could have been distributed in a manner less likely to create a false impression of union largesse. But this court has held that "[i]n determining whether an election should be invalidated, the focus should be on the effects of a particular act on the electorate rather than on the actor's intent." *NLRB v. Gulf States Canners, Inc.*, 585 F.2d 757, 759 (5th Cir. 1978); *Plastic Masters, Inc. v. NLRB*, 512 F.2d 449, 450–51 (6th Cir. 1975). The acting regional director primarily looked to the Union's intent, which is never a controlling factor. But he also noted that Klingler had presented no evidence of "objectionable effect," which is the proper focus of the inquiry. Of course, proof of subjective effect upon the minds of the employees is quite difficult to show without a hearing. For that reason, we have held that the employer may justify the need for a hearing by showing that the payments had a "tendency to influence the outcome of the election" when viewed in light of all the relevant facts, a somewhat more lenient standard than the evidence of "objectionable effect" that the acting regional director apparently required in this case. *Gulf States Canners*, 585 F.2d at 759. If this election had been a close one, Klingler might have introduced evidence sufficient to meet the more lenient standard. When the margin of an election result is narrow, the tendency to influence the outcome may be inferred from little more than the external facts. *Id.*, 585 F.2d at 759. But when the margin is wide, a greater objective impact is required, which "would appear to be more capable of proof

dents are lumped together, they clearly do not amount to an atmosphere of coercion.

**14.** It is clear that, if we were looking at the broader disruptive or prejudicial effect of this incident, it would be immaterial whether the leadperson were acting as a representative of the Union. *NLRB v. Carroll Contracting & Ready-Mix*, 636 F.2d 111, 112–13 (5th Cir. 1981). Klingler essentially raised that broader question in the preceding paragraph. Here,

Klingler objects to the incident on the more narrow grounds that it violates a rule established by the Board itself in a specific case. Because Klingler has not cited us any NLRB case to indicate that the Board has construed the *Milchem* rule to require less than literal union representation, we cannot say that it was improper for the acting regional director to base his holding on the absence of that factor alone.

because of its overwhelming nature." *United Steelworkers of America v. NLRB*, 496 F.2d 1342, 1347 n.11 (5th Cir. 1974).

 In this case Klingler offered proof of nothing more than the incident itself, and it was simply not egregious enough to influence the outcome of an election decided by such a large margin, at least without more of a showing by Klingler of harmful effect. The acting regional director was, therefore, justified in overruling this objection.

### V. *Conclusion*

The Board seeks to provide "laboratory conditions" for a free election, *General Shoe Corp.*, 77 NLRB 124 (1948), but even laboratories are not *perfect* environments. When the issue is union representation, feelings run strong and deep, and some departures from a perfectly neutral environment must be expected. Consequently, the need for a post-election hearing or a new election is judged not against a standard of perfection, but against the likelihood that the *outcome* of the election might have been affected. This election was not perfect, but it was decided by a relatively large margin, and the Board concluded that none of the facts alleged by Klingler were egregious enough to bring into question the integrity of that result. We find that the Board had a substantial basis to reach that conclusion.

The request of the National Labor Relations Board for enforcement of its order is GRANTED.